UNITED STATES *v.* BRADDOCK.

*(Circuit Court, S. D. California. May 23, 1892.)*

No. 210.

**1. PUBLIC LANDS—TIMBER ENTRIES—REFUSAL OF CERTIFICATE.**
In a suit by the government to restrain defendant from cutting timber from a quarter section of public land, defendant filed a cross bill alleging that he had made application to purchase the land in question under the stone and timber act, (20 St. p. 89,) and complied with all the statutory requirements in that respect; but upon tender of the purchase money the local land officers refused the tender, and declined to issue a certificate of entry and purchase. *Held,* that defendant had acquired no vested interest in the land, and the government was entitled to withdraw it from sale. *The Yosemite Valley Case,* 15 Wall. 77, followed.

**2. SAME—INJUNCTION—SUFFICIENCY OF CROSS BILL.**
The cross bill having failed to show that the cross complainant was prevented from entering the land by reason of any fault on the part of the land officers, the rule that where one offers to do anything upon which the acquisition of a right depends, and is prevented by the fault of the other side, had no application to the case. An allegation that such officers combined to deprive cross complainant of the land, without stating the acts done or omitted in pursuance of the combination, was insufficient to make the rule applicable.

In Equity. Suit by the United States against Walter Braddock to restrain defendant from cutting timber on public land. Cross bill by defendant, setting up an application to purchase the land and compliance with statutory requirements, and alleging a wrongful refusal of the land officers to issue a certificate of entry and purchase. Heard on demurrer to the cross bill. Demurrer sustained.

*M. T. Allen,* U. S. Atty.

*H. C. Dillon,* for defendant.

Ross, District Judge. This suit was commenced to obtain an injunction restraining the defendant from cutting timber from a certain quarter section of timber land situated in township 15 S., range 25 E., Mount Diablo base and meridian, of which the bill alleges the government is, and since the acquisition of California has been, the owner in fee. The defendant filed an answer to the bill, and also a cross bill, to which the government interposed a demurrer, now for disposition. The cross bill, in effect, alleges that on the 5th day of October, 1885, the land in question was surveyed unappropriated timber land of the United States, and open to sale under the terms and provisions of the act of congress of June 3, 1878, (20 St. p. 89,) known as the "Timber and Stone Act;" that on that day cross complainant had the necessary qualifications to enter and purchase the land, and did then, pursuant to law and the regulations of the land department, make application to purchase it, by presenting to the register of the land office of the district in which the land is situate his affidavit, in duplicate, setting forth the statutory requirements, and which was in all things true; that upon the filing of the affidavit the register posted a notice of the application to purchase in the land office for the period of 60 days, and furnished the cross complainant, as such applicant, a copy thereof for publication in the newspaper published nearest the location of the land, which notice the applicant caused to be so published continuously for 60 days; that

upon the last day appointed in the notice, which was not less than 60 nor more than 90 days from its first publication, cross complainant furnished to the register satisfactory evidence that the notice was published as required by law, and that at the same time cross complainant, as such applicant, "presented proofs from at least two disinterested witnesses that the said land was of the character contemplated in the said act of congress; that it was unoccupied, and without any improvements; that it apparently contained no valuable deposit of gold, silver, cinnabar, copper, or coal; that at the hearing no contestant or objector appeared; that your orator further presented then and there a supplemental affidavit, at the request of the said register, reciting again the facts of his first affidavit, as aforesaid, and showing that he had not in the interval incumbered the said land, nor made any agreement or contract so that his entry thereof would benefit any one else, and that the money then and there tendered by your orator, as hereinafter stated, was veritably his own, and not borrowed for the purpose upon the said land; which said affidavits and proofs, so presented and made as aforesaid, were true in every particular, and were received, accepted, filed, and approved by the said register, and were then and there declared to be, and were in fact, satisfactory to both the register and receiver of said land office; that then and there, and on, to wit, the year last aforesaid, at the land office aforesaid, your orator, as such applicant, tendered to Tipton Lindsey, then and there being the receiver of the said land office, the full sum of $410 in gold coin of the United States, in payment for the said land, that being the price for 160 acres of land, at $2.50 per acre, together with the legal fees of the said land office." The cross bill further alleges as follows:

"That the said J. D. Hyde, register, and the said Tipton Lindsey, receiver, of the said land office, combining and confederating together with one A. J. [Wm. A. J.] Sparks, then and there being the commissioner of the general land office of the defendant, and all of them pretending to act under the authority of the defendant, but in truth and in fact acting without authority of law and without any authority whatever; and the said defendant, combining and confederating with divers persons to your orator unknown, but whose names when discovered your orator prays may be inserted herein as defendants to his cross bill, and made parties hereto, with proper and apt words to charge them; and contriving how to injure and oppress your orator, and deprive him of the said lands,—the said register refused to accept, execute, and deliver to your orator a proper certificate for the entry and purchase of said land, or any certificate whatever of the said entry and purchase by your orator; and the said receiver refused to execute and deliver to your orator a proper or any receipt for such purchase money so tendered by your orator as aforesaid in payment for the said land; that thereupon your orator duly and regularly appealed from the decision of the register and receiver in thus refusing the said tender, and in refusing to issue to him a certificate of the entry and purchase of the said land; that the said appeal was taken to the honorable commissioner of the general land office of the United States of America within the 30 days allowed by law therefor; that afterwards, and in said general land office, such proceedings were had upon said appeal that the commissioner, the Honorable William A. (Lewis A.) Groff, on or about the 31st day of March, A. D. 1891, then and there being the commissioner

of the general land office, reversed the said decision of the register and receiver of the said land office at Visalia; but afterwards, and on or about the 10th day of April in the year 1891, the Honorable John Noble, then and there being the secretary of the interior department of the United States of America, upon reference of the said decision to him from the said commissioner of the general land office, refused to concur therein, and refused to issue or recommend to be issued to your orator a patent for the said land, and canceled said entry."

The act under which the cross complainant applied to purchase the land in question is, as has been said, that of June 3, 1878, (20 St. p. 89.) By the first section of the act it is provided that, subject to certain provisions not necessary to be mentioned, the surveyed public lands of the United States within the states of California, Oregon, and Nevada, and in Washington Territory, not included within military, Indian, or other reservations of the United States, valuable chiefly for timber, but unfit for cultivation, and which have not been offered at public sale according to law, may be sold to citizens of the United States, or persons who have declared their intention to become such, in quantities not exceeding 160 acres to any one person or association of persons, at the minimum price of $2.50 per acre. By the second section it is provided that any person desiring to avail himself of the provisions of the act shall file with the register of the proper district a written statement in duplicate, one of which is to be transmitted to the general land office, designating by legal subdivisions the particular tract of land he desires to purchase, setting forth that the same is unfit for cultivation, and valuable chiefly for its timber or stone; that it is uninhabited; contains no mining or other improvements, except for ditch or canal purposes where any such do exist, save such as were made by or belong to the applicant, nor, as deponent verily believes, any valuable deposit of gold, silver, cinnabar, copper, or coal; that deponent has made no other application under the act; that he does not apply to purchase the same on speculation, but in good faith to appropriate it to his own exclusive use and benefit; and that he has not, directly or indirectly, made any agreement or contract, in any way or manner, with any person or persons whatsoever, by which the title which he might acquire from the government of the United States should inure, in whole or in part, to the benefit of any person except himself; which statement must be verified by the oath of the applicant. By the third section it is provided that upon the filing of the statement, as provided in the second section of the act, the register shall post a notice of the application, embracing a description of the land, in his office for 60 days, and shall furnish the applicant a copy of the same for publication in a newspaper published nearest the location of the land, for a similar period; and after the expiration of the 60 days, if no adverse claim shall have been filed, the person desiring to purchase shall furnish to the register satisfactory evidence ——*First*, that notice of the application was duly published as required; *secondly*, that the land is of the character contemplated in the act, unoccupied and without improvements, other than those excepted, and that it apparently contains no valuable deposit of gold, silver, cinnabar, copper,

or coal; and upon payment to the proper officer of the purchase money of the land, together with the fees of the register and receiver, the applicant may be permitted to enter the land, and, on the transmission to the general land office of the papers and testimony in the case, a patent shall issue thereon. It is also provided that effect shall be given to the provisions of the act by regulations to be prescribed by the commissioner of the general land office.

It is perfectly clear that the mere filing of the application to purchase under this act confers upon the applicant no right as against the United States, and that, until the applicant has acquired a vested right in the land, it is within the power of the government to withdraw it from sale or make any other disposition of it. The filing of an application to purchase may initiate a right to purchase as against a subsequent applicant for the same privilege, but to say that the initiation of such a right imposes an obligation on the government to convey the title is to confound the manifest distinction pointed out by the supreme court in the *Yosemite Valley Case*, 15 Wall. 77, between the acquisition of a legal right to the land as against the owner, the United States, and the acquisition of a legal right as against other parties to be preferred in its purchase. "It seems to us little less than absurd," said the court in the case cited, "to say that a settler or any other person, by acquiring a right to be preferred in the purchase of property, provided a sale is made by the owner, thereby acquires a right to compel the owner to sell, or such an interest in the property as to deprive the owner of the power to control its disposition."

There can be no doubt of the correctness of the doctrine that where one offers to do everything upon which the acquisition of a right depends, and is prevented by the fault of the other side, his right is not lost by his failure. It is strenuously urged by counsel for cross complainant that the present case comes within this principle. But the difficulty is that the cross bill does not show that the cross complainant was prevented from entering the land in question by reason of any fault on the part of the officers of the land department of the government. Such a fault, if it existed, should have been set forth. The facts in respect to the matter should have been stated. It is not enough to charge generally, as is done in the cross bill, that the then register and receiver and commissioner of the land office combined to deprive cross complainant of the land in question, without stating the acts done or omitted to be done in pursuance of such combination. It is alleged that the receiver of the land office refused to execute to the cross complainant a receipt for the money tendered for the land, and that the register refused to execute to him a certificate of entry or purchase; and, although there is no direct averment of the fact, it sufficiently appears—the pleading being taken, as it should be, most strongly against the pleader—that the officers of the local land office refused to receive the money tendered, or to permit the cross complainant to enter the land. Why, does not appear from the cross bill. In an opinion by the secretary of the interior in regard to this same land, in connection with other lands, rendered April 6, 1891,

(Copp, Landowner, May 1, 1891, p. 35,) it is said that the tender of payment was refused, and the application to purchase rejected by the local officers, for the reason that by telegram of December 2 and letter of December 24, 1885, the townships in which the said lands are situate were suspended from entry or filing under the land laws by the commissioner of the general land office; that such suspension and withdrawal of the townships was on account of alleged irregularities and fraud on the part of the claimants; and that this order of suspension and withdrawal was not revoked as to the townships in which the lands in question are situate prior to the acts of congress of September 25 and October 1, 1890, (26 St. pp. 478, 650,) purporting to reserve the land in question, among other lands, for a park and other purposes.

The matters thus stated in the opinion of the secretary of the interior cannot, perhaps, be accepted as facts in passing upon the demurrer to the cross bill, since that pleading omits all mention of them; but it is sufficient ground of objection to it that they may have constituted the reason why the officers of the land department of the government refused to receive the cross complainant's money for the land, or to permit him to enter it. "The commissioner of the general land office exercises a general superintendence over the subordinate officers of his department, and is clothed with liberal powers of control, to be exercised for the purposes of justice, and to prevent the consequences of inadvertence, irregularity, mistake, and fraud, in the important and extensive operations of that officer for the disposal of the public domain." *Bell* v. *Hearne*, 19 How. 262. And, by the third section of the act under which the application in question was made, the commissioner is expressly required to give effect to its provisions by regulations to be prescribed by him. As was justly said by the secretary of the interior in the opinion to which allusion has been made, an application to purchase land under the act of June 3, 1878, is certainly, as against the United States, of no greater force than a claim initiated by settlement and residence upon and improvement of public lands under the provisions of the late pre-emption law, in respect to which the doctrine is firmly established that the power of regulation and disposition conferred upon congress by the constitution only ceases when all the preliminary acts prescribed by the statute for the acquisition of the title, including the payment of the price for the land, have been performed by the settler. "When these prerequisites have been complied with," said the court in the *Yosemite Case, supra,* "the settler for the first time acquires a vested interest in the premises occupied by him of which he cannot be subsequently deprived. He is then entitled to a certificate of entry, from the local land officers, and ultimately to a patent for the land from the United States. Until such payment and entry the acts of congress give to the settler only a privilege of pre-emption in case the lands are offered for sale in the usual manner; that is, the privilege to purchase them in that event in preference to others." For the reasons stated the demurrer must be sustained, without reference to other objections urged to the cross bill. So ordered.