[No. 15264.    Department Two.    August 7, 1919.]

ROBERT BRUCE BROWN, *Appellant,* v. EUGENE G. BAKER
*et al., Respondents.*[1]

PUBLIC LANDS (14)—RIGHTS ACQUIRED BY ENTRY—VESTED RIGHTS—
PRICE. The only vested right that a successful contestant of a home-
stead entry has is the preference right for thirty days to enter upon
the lands; and the general land office may, between the date of con-
tract and date of entry, change the rules relating to the manner
of acquisition of government lands, and can require that timber
lands previously sold at $2.50 per acre shall be appraised and sold
at the appraised value.

SAME (19)—TIMBER AND STONE LANDS—"MINIMUM" PRICE—RIGHT
TO CHANGE. 20 Stat. at L. 89, providing that the minimum price at
which lands chiefly valuable for timber may be sold does not prevent
the general land office from fixing a greater price and requiring an
appraisement and sale at the appraised value.

Appeal from a judgment of the superior court for
Snohomish county, Bell, J., entered October 23, 1918,
upon sustaining a demurrer to the complaint. Affirmed.

*R. B. Brown (Peters & Powell,* of counsel), for ap-
pellant.

*Thomas A. Stiger* and *John R. Dally,* for respond-
ents.

MOUNT, J.—This action was brought to obtain a de-
cree adjudging the title to certain real estate, patented
by the United States to defendants, to be held by them
in trust for the benefit of plaintiff. The trial court
sustained a general demurrer to the complaint and
dismissed the action. Plaintiff elected to stand upon
the allegations of the complaint, and the action was
dismissed. Plaintiff has appealed.

The complaint alleges the following facts: That,
on the 8th day of November, 1905, the real estate in

[1]Reported in 183 Pac. 89.

controversy was public surveyed lands subject to entry at the Seattle land office; that, on November 17, 1905, one Otto J. Larson entered upon said lands under the United States homestead laws at said time, filed an affidavit of prior settlement which, under the rules of the department, gave him a preference right dating back to July 14, 1905; that, on October 24, 1906, Larson made final proof and commuted his homestead entry to a cash entry; that, on July 31, 1907, the appellant contested the homestead entry of Larson, and upon a hearing of this contest, the register and receiver rendered their decision in said contest case in favor of the appellant; that Larson appealed from that decision to the general land office, thence to the Secretary of the Interior, resulting in each instance in an affirmance of the decision of the local land office; that Larson's entry was finally canceled and appellant was given thirty days from the date of notice thereof in which to exercise his preference right to file his entry upon the land; that, on February 25, 1910, within thirty days from the date of the cancellation of the Larson homestead entry, appellant made application to enter said lands under the stone and timber act of June 3, 1878, it having been shown, and the department having found, that the lands in question were chiefly valuable for timber; that this application was made upon the blanks and in the manner prescribed by the general land office which had been in use since the act of 1878 had become effective, up to November 30, 1908, at which last-named date a new form of application prescribed by the Secretary of the Interior and new regulations had gone into effect, which regulations, among other things, required the applicant to file an affidavit of the value of the lands sought to be entered, and also the value of the timber thereon, and further provided for the appraisement of said

lands and the timber thereon by an appraiser sent out
for that purpose; and also provided that, after that
date, no sale should be made under said act except as
provided in such regulations; that the register and
receiver of the local land office being divided in opinion
as to the right of the appellant to file his application
in the manner prescribed prior to November 30, 1908,
the application was sent to the general land office and
thence to the Secretary of the Interior, and resulted in
a decision that the appellant was controlled by the
new regulations and must pay the appraised value
placed upon said lands and timber; that thereafter the
lands were appraised at the sum of four thousand two
hundred and twenty-five dollars ($4,225), and subse-
quently reappraised at four thousand twenty-two dol-
lars and fifty cents ($4,022.50), which appellant re-
fused to pay, but offered to pay two dollars and fifty
cents ($2.50) per acre, as all persons had paid before,
appellant claiming this was the only price at which
timber land could be sold under said act; that, while
appellant was contesting these various questions be-
fore the department, the respondents Eugene G. Baker
and wife moved upon the land in question with full
knowledge of all the facts and of appellant's rights
therein; and that, on November 17, 1917, patent was
made and issued to said Eugene G. Baker under the
United States homestead act, and he is still holding
the lands under said patent.

The prayer of the complaint is that respondents may
be adjudged to hold the patent to these lands as trus-
tees for appellant, and that respondents be required to
convey said lands to appellant upon the payment of
the sum of four hundred dollars ($400).

Appellant concedes upon this appeal that he may
not litigate matters of fact which have been passed
upon by the general land office, but argues that errors

of law committed by the land office may now be liti-
gated in this action. We may concede these positions
for the purpose of this case. Appellant then argues
that he initiated his right on July 31, 1907, when he
instituted the contest in the United States land office
at Seattle against the entry of O. J. Larson; that his
contest successfully ripened into a vested right begin-
ning at that date; and that the land department could
not thereafter make any change in the rules relating
either to the price to be paid or to the construction
which had previously been placed upon the timber and
stone act.

Section 2, ch. 89, 21 Stat. at L. 140 ("An act for the
relief of settlers on public lands"); 8 Fed. Stat. Ann.
(2d ed.), page 598, provides:

"In all cases where any person has contested, paid
the land-office fees, and procured the cancellation of
any preemption, homestead, or timber-culture entry,
he shall be notified by the register of the land office of
the district in which such land is situated of such can-
cellation, and shall be allowed thirty days from date
of such notice to enter said lands: . . ."

We think it is apparent that the only vested right
which the appellant had upon the cancellation of the
entry of Larson upon the lands was the preference
right for thirty days to enter upon the lands. He
acquired no vested interest in the land itself. We are
also satisfied that the general land office might, be-
tween the date of the contest and the date of the entry
filed by the appellant, legally change the rules relating
to the manner of acquisition of government lands. It
appears from the complaint that, prior to the contest
above referred to, the land department had been sell-
ing these lands at the minimum price of two dollars
and fifty cents ($2.50) per acre, and that, between the
time of the contest and the time of the entry by

appellant, the land department of the government changed this rule so that lands entered upon under the stone and timber act should be appraised and should be sold at the appraised value, rather than at the former price of two dollars and fifty cents ($2.50) per acre. In *United States v. Braddock,* 50 Fed. 669, the court said, at page 672:

"It is perfectly clear that the mere filing of the application to purchase under this act confers upon the applicant no right as against the United States, and that, until the applicant has acquired a vested right in the land, it is within the power of the government to withdraw it from sale or make any other disposition of it. The filing of an application to purchase may initiate a right to purchase as against a subsequent applicant for the same privilege, but to say that the initiation of such a right imposes an obligation on the government to convey the title is to confound the manifest distinction pointed out by the supreme court in the *Yosemite Valley Case,* 15 Wall. 77, between the acquisition of a legal right to the land as against the owner, the United States, and the acquisition of a legal right as against other parties to be preferred in its purchase. 'It seems to us little less than absurd,' said the court in the case cited, 'to say that a settler or any other person, by acquiring a right to be preferred in the purchase of property, provided a sale is made by the owner, thereby acquires a right to compel the owner to sell, or such an interest in the property as to deprive the owner of the power to control its disposition.' "

See, also, the *Yosemite Valley Case [Hutchings v. Low],* 82 U. S. 77. What is there said, we think, settles the question that a mere filing creates no vested right in the land. The right of the government to change the rule, or to entirely withdraw the land from sale, was not affected by appellant's right to file at some later date.

Appellant also argues that the general land office had no authority to fix a greater price than two dollars and fifty cents ($2.50) per acre upon this tract of land. Section 1 of the stone and timber act, 20 Stat. at L. 89 (9 Fed. Stat. Ann., 2d ed., page 606), provides as follows:

"That surveyed public lands of the United States within the public-land states, . . . valuable chiefly for timber, but unfit for cultivation, and which have not been offered at public sale according to law, may be sold to citizens of the United States, or persons who have declared their intention to become such, in quantities not exceeding one hundred and sixty acres to any one person or association of persons, at the minimum price of two dollars and fifty cents per acre; . . ."

Appellant contends that this section fixed the price of two dollars and fifty cents ($2.50) per acre and that the general land office was without authority to change that price, and that, when he tendered that price to the land department, that department was bound to accept it, and the refusal was error of law which may now be corrected by the court. We think it is plain that this section fixes only the *minimum price* at which the land may be sold. The clear inference is that the general land office may fix a greater price. This was done and, at the time the appellant filed upon the land, he was required to file under the rules and regulations then promulgated by the general land office. The words "minimum price," used in this section, mean the lowest price, and not a fixed price of two dollars and fifty cents ($2.50) per acre. To hold otherwise would be to say that the words "minimum price" were superfluous and meant nothing. We are of the opinion, therefore, that the general land office or the secretary of the interior committed no error in law when a provision was made for the appraisement of such lands,

and that the lands should be sold at the appraised value and not at the minimum price.

From these considerations, we are led to the conclusion that the trial court properly sustained the demurrer, and the judgment is therefore affirmed.

HOLCOMB, C. J., BRIDGES, and PARKER, JJ., concur.

FULLERTON, J., concurs in the result.