The complainant seeks a preliminary injunction. He conducts a cigar and cigarette stand at No. 921 Bergen avenue, Jersey City, New Jersey. The defendant operates a drug store, which it designates as a "cut-rate drug store," at No. 14 Journal Square, Jersey City, approximately 500 feet from the location of the complainant's place of business, in which it offers for sale, and sells, various brands of cigars and cigarettes at retail to the general public. The cigarettes sold by complainant and defendant bear distinctive trade-marks, brands, names, labels and copyrights identifying them, especially the brands mentioned in the bill of complaint. *Page 129 
It is alleged in the bill and affidavits that the products and brands of cigarettes are in full and open competition with commodities in the same general class produced by others. They are, and have been sold, at retail under the said trade-marks, brands and names identifying them, which definitely designate the respective brands, and have become well known in the trade. They have been widely advertised both in the State of New Jersey and the states of the nation, it is alleged, and a valuable good-will as a consequence of the advertising and of the intrinsic merits of the brands of cigarettes attaches to them.
The complainant on August 5th, 1940, entered into a fair trade agreement with New Jersey Tobacco Company of Newark, New Jersey, a wholesaler, from whom he purchased at wholesale the said brands of cigarettes sold by him at retail, in pursuance of chapter 58 of the laws of 1935, Revised Statutes of 1937, title 56,chapter 4, article 2, and the amendments thereof and supplements thereto, commonly known as the "Fair Trade act." In the fair trade agreement is a schedule of prices for the sale at retail of the several brands of cigarettes mentioned therein. It is alleged that similar fair trade agreements have been entered into by several hundred retailers in the State of New Jersey, with wholesalers, who have control of the distribution to retailers and sell to retailers approximately eighty-five per cent. of all the several brands of cigarettes so distributed to and sold by retailers in the State of New Jersey; that the prices set forth in those agreements are uniform and are adhered to by the majority of retailers in the State of New Jersey; and that the defendant has had due notice of the execution of those fair trade agreements.
The complainant states that since the execution of the agreement, he has at all times adhered to it and has made no sales of the several brands of cigarettes below the fixed uniform retail sales prices mentioned in the agreement. He charges that the defendant is now, and has for some time past, willfully and knowingly offered for sale at retail, advertised for sale at retail, and has sold at its place of business aforesaid, the said several brands of cigarettes at prices substantially *Page 130 
less than the prices stipulated in the above mentioned fair trade agreement. He says that it displays in its windows an advertisement for the sale of the cigarettes at cut-rate prices, and to the bill of complaint he attached a copy of the advertisement, which is referred to as Exhibit "D." The bill mentions specific purchases at cut-rate prices. As a result of the defendant's advertising, offering for sale, and selling the several brands of cigarettes at the cut-rate prices, complainant avers, the public is induced to purchase cigarettes at the cut-rate prices from the defendant, thereby refraining from purchasing the same brand in his place of business because he cannot meet the cut-rate prices of the defendant without violating the provisions of his fair trade agreement, consequently, he suffers a loss of trade and a substantial monetary deficit, which cannot be measured or accurately determined.
The cut-rate sales by the defendant, it is asserted, are not due to a closing out of its stock for the purpose of discontinuing the sale and delivery of the several brands of cigarettes; nor because those commodities, or brands of cigarettes, had been damaged or had deteriorated in quality; that no notice of damage or deterioration in quality has been given to the public; nor were any of said acts done, or such sales made, by the defendant pursuant to an order of any court; that the acts of the defendant constitute unfair competition and result in irreparable loss to the complainant, and are a fraud upon the public.
The defendant's replying affidavit declares that the complainant is not damaged by its act in selling the brands of cigarettes at cut-rate prices. It states that there is no established price for the sale of cigarettes, and that the manufacturers, and owners, of the brands mentioned in the schedule annexed to the fair trade agreements, have not set any minimum re-sale prices of their products, nor have they been a party to any fair trade contracts in the State of New Jersey. Attached to the affidavit are letters from owners and manufacturers of cigarettes setting forth they have no agreement regulating fair trade prices of the cigarettes manufactured by them in the State of New Jersey. The affidavit also declares that the fair trade agreement referred to in the bill *Page 131 
of complaint, attempts to fix the prices for the retail sale of ninety-nine per cent. of the cigarettes sold in New Jersey; that there are a number of other retail stores in the same neighborhood selling at the same prices as the defendant, the same brands of cigarettes at prices fixed under "Fair Trade Agreements" made with their wholesalers, and that there is no competition between the several brands of cigarettes, and that the brands of cigarettes are not of standard quality.
The complainant's reply affidavit mentions the names of a large number of brands of cigarettes sold in this state, which are not included among the brands covered by the fair trade agreement. It may be here stated the stores selling the same brands of cigarettes at the same prices as the defendant, in the defendant's neighborhood, mentioned in the defendant's affidavit, entered into "fair trade" agreements with their wholesalers, after this suit was brought. Defendant admits selling the said brands of cigarettes below the price mentioned in complainant's fair trade agreement; and it also admits that it received notice of complainant's fair trade agreement.
What constitutes unfair competition is stated in chapter 4, section 6 of the act, as amended by the Laws of 1938 p. 376 §2. It reads:
"Willfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provisions of section 56:4-5 of this Title, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of the producer or distributor of such commodity or at the suit of any retailer selling such commodity at not less than the price stipulated in any contract entered into pursuant to the provisions of section 56:4-5 of this Title."
The constitutionality of the Fair Trade act has been upheld by our Court of Errors and Appeals in the case of Johnson Johnson v. Weissbard, 121 N.J. Eq. 585; 191 Atl. Rep. 873.
Similar fair trade acts have been enacted in forty-four states of the Union and the courts in some of those states have sustained them. See Triner Corp. v. McNeil, 363 Ill. 559; 2 N.E. Rep.
2d 929; Seagram Distillers Corp. v. *Page 132 Old Dearborn Distributing Co., 363 Ill. 610; 2 N.E. Rep. 2d940; Max Factor Co. v. Kunsman, 5 Cal. 2d 446;55 Pac. Rep. 2d 177; Pyroil Sales Co., Inc., v. The Pep Boys,c., 5 Cal. 2d 784; 55 Pac. Rep. 2d 194; WecoProducts Co. v. Reed Drug Co., 274 N.W. Rep. 426; Broff v.Silver Liquor Stores, 5 Conn. Sup. 288; 25 Conn. Law Jour. 204.
The Supreme Court of the United States affirmed the decisions of the state courts in the above cited cases of Old DearbornDistributing Co. v. Seagram-Distillers Corp. and McNeil v.Joseph Triner Corp., in 299 U.S. 183, and The Pep Boys,c., v. Pyroil Sales Co., Inc., and Kunsman v. Max Factor Co., in 299 U.S. 198. The New York Court of Appeals upheld the constitutionality of the Fair Trade act in the case of BourjoisSales Corp. v. Dorfman, 273 N.Y. 167; 7 N.E. Rep. 2d 30.
The several points contended in the instant case have, in my opinion, been disposed of by the ruling of our Court of Errors and Appeals in the leading case of Schenley Products Co. v.Franklin Stores Co., 124 N.J. Eq. 100; 199 Atl. Rep. 402. The Schenley Products Company was the sole distributor in New Jersey of the commodity covered by the fair trade contract; it was not a party to the contract, nor were the owners of the brands of liquors covered by the contract. The contract upon which suit was brought was made by the Gillhaus Beverage Company, Inc., a wholesaler, or distributor, as seller, with a retailer. The Vice-Chancellor in that case struck the amended bill for the reason that one of the contracting parties to the agreement should, in his opinion, have been the owner, or an agent of the owner, of the trade-mark, brand or name of the product, which was the subject of the contract. Schenley Products Co. v. FranklinStores Co., 122 N.J. Eq. 69; 192 Atl. Rep. 375. The Court of Errors and Appeals, in reversing the Vice-Chancellor, held that the owner of a commodity bearing the trade-mark, brand or name, was not a necessary party to the fair trade contract. It, among other things, said:
"A reading of the statute discloses no such requirement as thus laid down. It provides merely that no contract shall be deemed in violation of any law of this state for the reason *Page 133 
that the buyer agrees not to resell a commodity bearing the trade-mark, brand, or the name of the producer or owner of such commodity and which is in fair and open competition with commodities of the same general class produced by others, except at the price stipulated by the vendor, or, where the vendee or producer shall require, in delivery to whom he may resell such commodity, an agreement that the purchaser will not, in turn, resell except at the price stipulated by such vendor or vendee. The act further provides that willfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant thereto, whether the person so doing is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby. * * *
"To assert that the contract must be made by or on behalf of the owner of the trade-mark or brand, or by or on behalf of the producer of the commodity bearing the trade-mark or brand, is to import into the statute that which is clearly not within its provisions and that which is unnecessary to its operation. * * *
"The statute gives approval to contracts which provide that `the buyer will not resell * * * except at the price stipulated by the vendor.' Like approval is given to contracts wherein `the vendee or producer require' that his vendee shall not resell `except at the price stipulated by such vendor or such vendee.' The language thus used by the legislative body, no contrary intention appearing, will be given its ordinarily accepted meaning and will not be construed as limited to a particular class. Indeed, to state that the vendee of a commodity may require his vendee not to resell, c., quite definitely informs that others than the owners of the brands or the producers of the commodity were within the legislative mind and were to have the advantages afforded by the statute."
In this case it appears that "twelve wholesalers have entered into the alleged agreement with several hundred retailers, and that some 30,000 to 40,000 notices of this agreement were sent out." It has been held by this court that a single contract was sufficient to establish a minimum fixed price. Revlon *Page 134 Nail Enamel Corp. v. Charmley Drug Shop, 123 N.J. Eq. 301;197 Atl. Rep. 661.
The defendant argues that the complainant's right to a preliminary injunction should be denied under the ruling inCitizens' Coach Co. v. Camden Horse Railway Co., 29 N.J. Eq. 299.
It lays stress upon that part of the ruling where the court said:
"`An injunction will not issue where the right of the complainant, which it is designed to protect, depends upon a disputed question of law, about which there may be a doubt, which has not been settled by the courts of law of this state.' * * * Such a claim cannot be assumed or decided in favor of a complainant on a motion for a preliminary injunction; for, by so doing, the case is first decided, and, afterwards, when the proofs are in, heard in its final stage."
While this court agrees with the soundness of the principle quoted, it denies its application to the situation at hand. Here, I find no "disputed question of law, about which there may be a doubt, which has not been settled by the courts of law of this state." Schenley Products Co. v. Franklin Stores Co., supra.
The material allegations by complainant are admitted by defendant; and service of the notice of the execution of the fair trade agreement by complainant with a wholesale dealer is admitted by the defendant. The principle laid down by our Court of Errors and Appeals in the case of Ideal Laundry Co. v.Gugliemone, 107 N.J. Eq. 108; 151 Atl. Rep. 617, is pertinent. The court there said in part:
"While the general rule is that a preliminary injunction will not issue where the material fact in complainant's bill and affidavits, on which the complainant's right depends, is met by a full, explicit and circumstantial denial under oath, yet, where, as here, the denial lacks these essential qualities, and upon the entire showing from both sides it appears reasonably probable that the complainant had the right claimed, the injunction may issue."
The defendant's attitude is largely directed to assailing the right of the complainant and his vendor to make the fair trade contract; it charges that the agreement results from an illegal combination to fix prices. I do not take that view. *Page 135 
The defendant contends that the attempt to establish minimum prices as set forth in the bill of complaint is price fixing conspiracy. Neither the facts herein nor the decisions of the courts sustain the defendant's point. Revised Statutes 1937,title 56, chapter 4, section 4, of the Fair Trade act recites: "This article shall not apply to any contract or agreement between wholesalers or between producers or between retailers as to sale or resale prices." The quotation refers to what is known as horizontal contracts; that is to say, contracts made between producers themselves, between wholesalers themselves, and between retailers themselves. While the act condemns horizontal contracts, it upholds what are called vertical contracts; that is to say, contracts between wholesalers and retailers, or vendors and vendees. The contract in the instant case is between a wholesaler and a retailer, which makes it a vertical contract.
The defendant declares: "The fair trade laws were meant to operate vertically as to one product and never horizontally as to all products in a field. Manufacturers of various brands of cigarettes cannot get together and fix their respective prices thereon. This would violate the Sherman Anti-Trust law and the laws of New Jersey against restraint of trade and monopolies. Certainly, if manufacturers cannot do so, a fortiori, wholesalers cannot do so." We find no fault with that observation. We are here solely concerned with the facts before us; facts based entirely on a vertical contract and not upon a horizontal contract. It has not been established that the wholesalers with whom the complainant contracted "violated the Sherman Anti-Trust law and the laws of New Jersey against restraint of trade and monopolies." The defendant's suspicion of a conspiracy by wholesalers to fix prices is far from being evidence of the fact. Its conclusion that the wholesalers that entered into the fair trade agreements with the retailers in this state must have combined to fix prices, does not stand as legitimate evidence of the fact. While it quotes provisions of the Miller-Tydings act condemning conspiracies, it omits to quote parts of that act which sustain fair trade agreements made under state enactments. The Miller-Tydings act in itself, is not a fair trade *Page 136 
act; it is an amendment to the federal Sherman Anti-Trust act. What, I believe, the defendant had in mind, but did not fully quote, is the provision to be found in 15 U.S.C.A. § 1, which reads as follows:
"Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal: Provided, That nothing herein contained shall render illegal, contracts or agreements prescribing minimum prices for the resale of a commodity which bears, or the label or container of which bears, the trade mark, brand, or name of the producer or distributor of such commodity and which is in free and open competition with commodities of the same general class produced or distributed by others, when contracts or agreements of that description are lawful as applied to intra state transactions, under any statute, law, or public policy now or hereafter in effect in any State, Territory, or the District of Columbia in which such resale is to be made, or to which the commodity is to be transported for such resale, and the making of such contracts or agreements shall not be an unfair method of competition under section 45 of this title, as amended and supplemented: Provided further, That the preceding proviso shall not make lawful any contract or agreement, providing for the establishment or maintenance of minimum resale prices on any commodity herein involved, between manufacturers, or between producers, or between wholesalers, or between brokers, or between factors, or between retailers, or between persons, firms, or corporations in competition with each other. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished by fine not exceeding $5,000, or by imprisonment not exceeding one year, or by both said punishments, in the discretion of the court. (As amended Aug. 17, 1937, c. 690, Title VIII, 50 Stat. 693.)"
The above quoted provision of the United States Code leaves no doubt that fair trade contracts adopted in pursuance of any state fair trade act are exempted from the provisions of the Sherman Anti-Trust act. In this case, the complainant retailer and the wholesaler entered into a fair trade agreement under the provisions of the statute of this state. Revised Statutes of1937, title 56, chapter 4, article 2 et seq.
The defendant, and a very substantial number of other retailers, had notice of the complainant's fair trade agreement but, notwithstanding, it willfully and knowingly advertised, offered for sale, and sold the said brands of cigarettes at cut-rate prices to the damage of the complainant. *Page 137 
I do not believe there is any point to the defendant's contention that the title of the Fair Trade act which reads — "An act to protect trade-mark owners, distributors, and the public against injurious and uneconomic practices in the distribution of articles of standard quality under a distinguished trade-mark, brand or name," protects only trade-mark owners and distributors, and that a wholesaler is without the purview of the act. The Court of Errors and Appeals in its opinion in Schenley ProductsCo. v. Franklin Stores Co., supra, does not support the defendant's contention to that effect. True, the act does define the words "producer" and "commodity." It does not define who is a "distributor." However, it may be taken for granted that a wholesaler handles and distributes the product to retailers; his act in so doing is coupled with an interest in it and a right of control over it.
The said cigarettes mentioned in the complaint are offered for sale "in fair and open competition with commodities of the same general class produced by others."
A balancing of the conveniences demands that a preliminary restraint issue. *Page 138