PONDER, Justice.
 

 In these consolidated proceedings, the plaintiffs are seeking to enjoin the defendant from advertising for sale, selling or offering for sale, products which bear, or the labels or containers of which bear, the respective trade marks of the plaintiffs at less than the minimum prices prescribed by plaintiffs, respectively, in contracts Which they have made with other local retail dealers.
 

 
 *964
 
 The plaintiffs applied for preliminary injunctions in the lower court which were excepted to by tire defendant on the ground that Act 13 of 1936, the Louisiana Fair Trade Act, is unconstitutional in that the statute violates Section 14 of Article XIX of the Constitution of 1921, as originally adopted and as amended and reenacted, and on the alternative ground, in event the Court should not hold the Fair Trade Statute unconstitutional, then, in that event, the petitions for the preliminary injunctions do not set forth a right or cause of action under the laws of the State of Louisiana. The exceptions were sustained, and the lower court gave judgment, dismissing the plaintiffs’ suits.1 The plaintiffs' have appealed.
 

 The plaintiff Pepsodent Company, is engaged in the business of producing, distributing and selling antiseptics, tooth paste, tooth powder, liquid dentifrices, and other commodities bearing, or the labels or containers of which bear, the trade mark or name of the plaintiff, the exclusive property of the plaintiff, -which are identified as having been manufactured and distributed by it.
 

 The plaintiff, International Cellucotton Products Company, is engaged in the business of distributing and selling sanitary napkins, facial tissues, and related commodities, all of standard quality and bearing, or the labels or containers of which bear, the trade mark or pame of the plaintiff, the exclusive property of the plaintiff, which are identified as having been manufactured and distributed by it.
 

 Different plaintiffs are involved in these suits, but they are brought against the same defendant. AVhile the petitions in the suits are not identical, yet they are to the same effect, viz., that the plaintiffs have entered into contracts, establishing minimum prices for the sale of their products in Louisiana with a large number of retailers, other than the defendant, pursuant to Act_13 of 1936, the Louisiana Fair Trade Act, and that due notice of the existence of such contracts was given to the defendant. It is alleged that the defendant wilfully and knowingly advertised and offered for sale at its retail store in New Orleans, Louisiana, products manufactured by the plaintiffs, and bearing their trade marks, labels and names at prices less than those established in the plaintiffs’ contracts, all in violation of Section 2 of the Louisiana Fair Trade Act, which constitutes unfair competition on the part of the defendant and has caused irreparable damage and injury to the plaintiffs. These consolidated cases present two identical questions for our determination; namely, the first question is whether or not the Fair Trade Act of this State is violative of Section 14 of Article XIX of the Louisiana Constitution; and secondly, whether or not the contracts with the other retailers comply with the Fair Trade Act, in event it is held that the statute is not violative of the Constitution.
 

 We will first consider whether or not the plaintiffs' contracts with other retail dealers comply with the Fair Trade Act. The defendant takes the position that Act 13 of 1936 does not legalize contracts containing provisions to the effect that the re
 
 *966
 
 tailer will not sell “at a price less than the minimum retail or resale price,” tmt, on the contrary, it permits only contracts which provide that the buyer will not resell the commodity except at the exact price stipulated by the vendor. Defendant relies, in support of its contention, on the cases of Mennen Company v. Krauss Company, D.C., 37 F.Supp. 161; Town of Lonoke v. W. Y. Bransford & Son, 141 Ark. 18, 216 S.W. 38; and Brown v. Baker, 108 Wash. 161, 183 P. 89.
 

 The pertinent provisions of Act 13 of 1936, the Fair Trade Act of this State, are as follows:
 

 “The Louisiana Fair Trade Act”
 

 “An Act to protect trade mark owners, distributors and the public against injurious and uneconomic practices in the distribution of articles of standard quality under a distinguished trade mark, brand or name.
 

 “Section 1. Be it enacted by the Legislature of Louisiana, That no contract relating to the sale or resale of a commodity which bears, or the label or content [container] of which bears, the trade mark, brand, or name of the producer or owner of such commodity and which is in fair and open competition with commodities of the same general class produced by others shall be deemed in violation of any law of the State of Louisiana by reason of any of the following provisions which may be contained in such contract:
 

 “1. That the buyer will not resell such commodity except at the price stipulated by the vendor.
 

 “2.
 
 That the vendee or producer require in delivery to whom he may resell such commodity to agree that he will not, in turn, resell- except at the price stipulated by such vendor or by such vendee.
 

 “Such provisions in any contract shall be deemed to contain or imply conditions that such commodity may be resold without reference to such agreement in the following cases:
 

 “1. In closing out the owner’s stock for the purpose of discontinuing delivering any such commodity.
 

 “2. When the goods are damaged or deteriorated in quality, and notice is given to the public thereof.
 

 “3. ' By any officer acting under the orders of any court.
 

 “Section 2. Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provision of Section 1 of this Act, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby.
 

 “Section 3. This Act shall not apply to any contract or agreement between producers or between wholesalers or between retailers as to sale or resale prices.
 

 “Section 4. The following terms, as used in this Act, are hereby defined as follows:
 

 “ ‘Producer’ means grower, baker, maker, manufacturer or publisher.
 

 
 *968
 
 “ ‘Commodity’ means any subject of commerce.
 

 “Section 5. If any' provision of this Act is declared unconstitutional it is the intent of the Legislature that the remaining portions thereof shall not be affected but that such remaining portions remain in full force and effect.
 

 “Section 6. This Act may be known and cited as ‘Fair Trade Act.’ ”
 

 In construing the statute involved herein, it is necessary to ascertain the legislative intent, and the reason which induced the Legislature to enact it should be considered in determining its meaning. Gremillion v. Louisiana Public Service Commission, 186 La. 295, 172 So. 163. Courts will construe a statute so as to accomplish the purpose for which it was enacted and to give effect to the legislative will. Galloway v. Wyatt Metal & Boiler Works, 189 La. 837, 181 So. 187. In interpreting a part or section of an act, in dispute, the part or section should be interpreted with •the rest of the act. Bradley v. Swift & Company (Balthazer v. Swift & Co.), 167 La. 249, 119 So. 37.
 

 The purpose of the Act as stated in its title is “to protect trade mark owners, distributors and the public against injurious and uneconomic practices in the distribution of articles of standard quality under a distinguished trade mark, brand or name.” A careful reading of the Act shows that its aim or purpose is to be effectuated or carried out by preventing price cutting. A reading of Section 1 of the Statute, without taking into consideration its other provisions, might lead to the conclusion that the Statute permits only contracts which provide for sales and resales at a fixed or exact price. However, when Section 1 is considered with the other sections of the Statute, especially Section 2, in the light of its purpose or aim, the conclusion is inescapable that a minimum price is contemplated. If it were otherwise, some restriction would have been placed on sales at prices in excess of those stipulated in the contract. It is only the sales of commodities at prices less than those stipulated in the contract which are declared to be unfair competition and actionable at the suit of any person who may be damaged thereby. Since the statute precludes sales at prices less than those stipulated in the contract and places no restriction on sales at prices in excess of those stipulated, the statute is in effect establishing a minimum price. Our conclusion, therefore, is that a contract which provides that the seller will not resell the commodity at less than the minimum retail or resale price complies with the statutory requirements of the Louisiana Fair Trade Act.
 

 The Fair Trade Acts of at least fifteen other states have provisions, similar to those contained in the Louisiana Fair Trade Act, to the effect that the buyer will not resell the commodity except at the price stipulated. In many of these states, the courts have entertained contracts, containing provisions that the buyer will not resell a commodity at less than the established minimum price, and they have upheld their validity. The question here presented was never raised in any of the cases, but it seems that it has been general
 
 *970
 
 ly accepted that contracts containing such provisions meet the statutory requirements, for the reason that they have never been questioned in this respect. See Joseph Pazen v. Silver Rod Stores, Inc., March 4, 1941, 129 N.J.Eq. 128, 18 A.2d 576; Pinesbridge Farm, Inc. v. Bloomingdale Brothers, Inc., 176 Misc. 179, 26 N.Y.S.2d 1005; Elizabeth Arden Sales Corp. v. Johnson Wholesale Perfume Co., Inc., Mass. Superior Court in Equity, No. 52,590; Lentheric, Inc., v. F. W. Woolworth Co., Pennsylvania Ct. of Common Pleas, No. 4, June 19, 1939; Lentheric, Inc., v. F. W. Woolworth, Cal. Super., Los Angeles County; Bourjois Sales Corp. v. Abraham Dorfman, Ct. of Appeals, 273 N.Y. 167, 7 N.E.2d 30, 110 A.L.R. 1411; Caron Corp. v. Wolf Drug Co., D.C.N.J., 40 F.Supp. 103; Hiram Walker, Inc., v. Goldmen, etc., Wisconsin Circuit Ct., Milwaukee County, No. 159,595, April 1, 1938; Schenley Products Co. et al. v. Franklin Stores Co., Err. and App., May 17, 1938, 124 N.J.Eq. 100, 199 A. 402 ; Carlton Sears et al. v. Western Thrift Stores of Olympia, Inc., et al., Sept. 12, 1941, 10 Wash.2d 372, 116 P.2d 756; Seagram-Distillers Corp. v. Old Dearborn Distributing Co., 363 Ill. 610, 2 N.E.2d 940; Joseph Triner Corp. v. McNeil, 363 Ill. 559, 2 N.E.2d 929, 104 A.L.R. 1435; Max Factor & Co. et al. v. Kunsman, 5 Cal.2d 446, 55 P.2d 177; and Ely Lilly & Co. v. Saunders, 216 N.C. 163, 4 S.E.2d 528, 125 A.L.R. 1308.
 

 We cannot agree with the decision of the U.S. District Court for the Eastern District of Louisiana in the case of Mennen Company v. Krauss Company, supra, for the reason that the views expressed therein are ' contrary to those we entertain.' The other two cases, Brown v. Baker and Town of Lonoke v. W. Y. Bransford & Son, supra, cited by the defendant wherein the phrases, “stipulated price” and “minimum price” are defined do not involve fair trade acts. In neither of these cases was the Court confronted with a situation in any way similar to that involved herein.
 

 The defendant’s attack on the Louisiana Fair Trade Act is based on the ground that the Statute permits combinations in restraint of trade in violation of Section Í4 of Article XIX of the State Constitution. The defendant suggests that prior to the incorporation of this provision, prohibiting combinations in restraint of trade, in our Constitution that the term “combinations in restraint of trade” had a well-recognized meaning which prohibited the price fixing device sought to be legalized by the Louisiana Fair Trade Act. It is pointed out that, contemporaneously with the adoption of the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1-7, 15 note, by Congress, our Legislature passed Act 86 of 1890, containing a provision similar to that contained in the Sherman Act to the effect that every contract or combination in restraint of trade was declared to be illegal. The defendant asserts that, according to the better view, price fixing, such as that purported to be sanctioned by the Louisiana Fair Trade Act, was, at the time of the first legislation on the subject matter, and is now considered to be in restraint of trade and void at common law. It is claimed that this view was also entertained by the United States Supreme Court. The defendant cites the following cases: Dr. Miles Med
 
 *972
 
 ical Company v. John D. Park & Sons Co., 220 U.S. 373, 31 S.Ct. 376, 55 L.Ed. 502; Boston Store of Chicago v. American Graphophone Co., 246 U.S. 8, 38 S.Ct. 257, 62 L.Ed. 551, Ann.Cas.1918C, 447; United States of America v. A. Shrader’s Son, Inc., 252 U.S. 85, 40 S.Ct. 251, 65 L.Ed. 471; Federal Trade Commission v. Beech-Nut Packing Co., 257 U.S. 441, 42 S.Ct. 150, 66 L.Ed. 307, 19 A.L.R. 882; United States v. Trenton Potteries Co., 273 U.S. 392, 47 S.Ct. 377, 71 L.Ed. 700, 50 A.L.R. 989; and United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 221, 60 S.Ct. 811, 84 L.Ed. 1129, 1167.
 

 The defendant contends that it was the intention of the framers of the constitutional provision involved herein to prohibit transactions constituting combinations in restraint of trade as defined by the common law and federal statutes, as interpreted by the United States Supreme Court.
 

 The first legislation in this State against combinations in restraint of trade, Act 86 of 1890, was enacted during the same year that the Sherman Act was adopted by Congress. This statute, like the Sherman Act, declared every contract or combination in restraint of trade to be illegal. The first appearance of any provision in our Constitution touching this subject matter was Article 190 of the Constitution of 1913, wherein combinations in restraint of trade were prohibited. The framers of this constitutional provision did not, for some reason, extend the prohibition to contracts. Section 14 of Article XIX of the Constitution of 1921, as amended, prohibits combinations in restraint of trade, but no provision, respecting contracts is contained therein. Undoubtedly, the framers of our Constitution had some reason for not including contracts in the prohibition against combinations in restraint of trade. We are aware of the fact that a contract may be used as an agency to effect or carry out a combination in restraint of trade, but we are not prepared to say that every contract that might have the effect of restraining trade would constitute a combination. Be that as it may, we rest our decision on a different ground.
 

 It is conceded that what are known as “Horizontal or Cross Agreements,” agreements among competing producers, manufacturers, etc., establishing a minimum price at which they shall sell their similar commodities, are illegal. However, there was considerable conflict of authority at common law as to the validity of “Vertical Agreements,” that is, a contract between a producer, manufacturer, etc., and a reseller or retailer, establishing the minimum price of a commodity which bears the trade mark, brand or name of the producer, such commodity being in fair and open competition with commodities of the same general class produced by others.
 

 Our research discloses that forty-five states have enacted fair trade statutes. In fact, all of the states, except Texas, Missouri, and Vermont, have enacted such statutes. These statutes have been attacked on various and sundry grounds, constitutional and otherwise, and have been sustained uniformly by the courts of last resort as well as the inferior courts in the respective states, with the single exception of the Florida Fair Trade Act, Acts 1937, c. 18395,
 
 *974
 
 which was stricken down, because of a defective title, in the case of Bristol-Myers Co. v. Webb’s Cut Rate Drug Co., Inc., 137 Fla. 508, 188 So. 91. The following cases are some of the decisions illustrative of this fact: Seagram-Distillers Corp. v. Old Dearborn Distributing Co., 363 Ill. 610, 2 N.E.2d 940; Joseph Triner Corp. v. McNeil, 363 Ill. 559, 2 N.E.2d 929, 104 A.L.R. 1435; Max Factor & Co. et al. v. Kunsman, 5 Cal.2d 446, 55 P.2d 177; Ely Lilly & Co. v. Saunders, 216 N.C. 163, 4 S.E.2d 528, 125 A.L.R. 1308; Goldsmith, etc., v. Mead Johnson & Co., 176 Md. 682, 7 A.2d 176; Johnson & Johnson v. Weissbard Bros., 121 N.J.Eq. 585, 191 A. 873; Bourjois Sales Corp. v. Dorfman, 273 N.Y. 167, 7 N.E.2d 30, 110 A.L.R. 1411; Pro-Phy-Lac-Tic Brush Co. v. Vidgoff, Oregon Circuit Ct. for the County of Multnomah, Oct. 19, 1939; Weco Products Co. v. Reed Drug Co., 225 Wis. 474, 274 N.W. 426; Sears et al. v. Western Thrift Stores of Olympia, Inc., et al., 10 Wash.2d 372, 116 P.2d 756; Fisher, Inc., v. Canfield, etc., et al., Colorado District Ct. for the City & County of Denver, No. A28837, Div. 2.; Gray, Ltd., v. Johnson Wholesale Perfume Co., Inc., D.C.Conn., Aug. 7, 1941, 45 F.Supp. 744; Miles Laboratories, Inc. v. Seignious, D.C., 30 F.Supp. 549; Miles Laboratories, Inc., v. Owl Drug Co., 67 S.D. 523, 295 N.W. 292.
 

 State fair trade statutes have been upheld by the Supreme Court of the United States in the following cases: Kunsman v. Max Factor & Co., 299 U.S. 198, 57 S.Ct. 147, 81 L.Ed. 122; Pep Boys, etc., v. Pyroil Sales Co., 299 U.S. 198, 57 S.Ct. 147, 81 L.Ed. 122; Old Dearborn Distributing Co. v. Seagram-Distillers Corp., 299 U.S. 183, 57 S.Ct. 139, 142, 81 L.Ed. 109, 106 A.L.R. 1476.
 

 In the case of Old Dearborn Distributing Co. v. Seagram-Distillers Corp., supra, the Illinois Fair Trade Act, Smith-Hurd Ill. Stat., c. 121%, § 188 et seq., which is to the same effect as the Louisiana Fair Trade Act, was held not violative of the “equal protection” and “due process” clauses of the Federal Constitution. The reasoning of the Supreme Court of the United' States in analyzing the Illinois Statute is so well founded that we are quoting pertinent excerpts from the opinion, viz.:
 

 “The Illinois statute constitutes a legislative recognition of a rule which had been accepted by many of the state courts as valid at common law. This rule was based upon the distinction found to exist between articles of trade put out by the manufacturer or producer under and identified by patefit, copyright, trade-mark, brand, qr similar device and articles of like character put out by others and not so identified. The same rule was followed for a time by some of the lower federal courts; but their decisions were upset by this court in a series of cases, of which Dr. Miles Medical Co. v. John D. Park & Sons Co., 220 U.S. 373, 31 S.Ct. 376, 55 L.Ed. 502, is an example. In that case this court held that a system of contracts between manufacturers and wholesale and retail merchants which sought to control the prices for sales by all such dealers by fixing the amount which the consumer should pay, amounted to an unlawful restraint of trade, invalid at common law and, so far as interstate
 
 *976
 
 commerce was affected, invalid under the Sherman Anti-Trust Act. * * *
 

 “It is unnecessary to review the contrary state decisions. It is enough, for present purposes, to say that, generally speaking, they sustained contracts standardizing the ■price at which ‘identified’ commodities subsequently might be sold, where the price standardization is primarily effected to protect the good will created or enlarged by the identifying mark or brand. Where a manufacturer puts out an article of general production identified by a special trade-mark or brand, the result of an agreement fixing the subsequent sales price affects competition between the identified articles alone, leaving competition between articles so identified by a given manufacturer and all other articles of like kind to have full play. In other words, such restraint upon competition as there may be is strictly limited to that portion of the entire product put out and plainly identified by a particular manufacturer or producer.
 

 “The ground upon which the opposing view of this court proceeds is that such an agreement, nevertheless, constitutes an unlawful restraint of trade at common law and, in respect of interstate commerce, a violation of the Sherman Anti-Trust Act. A careful reading of the decisions discloses no other ground.
 

 “Following these decisions, bills were introduced in Congress from time to time authorizing standardization of price agreements in respect of identified goods, upon which extensive hearings were held by the" appropriate congressional committees. These bills are in all essential respects like the Illinois act. The hearings disclose exhaustive legal briefs, and testimony and arguments for and against the economic value of the proposed laws. See, for example, Hearings before the Committee on Interstate and Foreign Commerce of the House of Representatives, on H.R. 13305 (63d Cong., 2d and 3d Sess.); H.R. 13568 (64th Cong. 1st and 2d Sess.) ; compare Report of the Federal Trade Commission on Resale Price Maintenance, 70th Cong.,'2d Sess., H. Doc. No. 546. * * *
 

 “In the second place, section 2 does not deal with the restriction upon the sale of the commodity qua commodity, but with that restriction because the commodity is identified by the trade-mark, brand, or name of the producer or owner. The essence of the statutory violation then consists not in the bare disposition of the commodity, but in a forbidden use of the trade-mark, brand or name in accomplishing such disposition. The primary aim of the law is to protect the property — namely, the good will — of the producer, which he still owns. The price restriction is adopted as an appropriate means to that perfectly legitimate end, and not as an end in itself.
 

 “Appellants here acquired the commodity in question with full knowledge of the then existing restriction in respect of price which ‘ the producer and wholesale dealer had imposed, and, of course, with presumptive if not actual knowledge of the law which authorized the restriction. Appellants were not obliged to buy; and their voluntary acquisition of the property with such knowledge carried with it, upon every
 
 *978
 
 principle of fair dealing, assent to the protective restriction, with consequent liability under section 2 of the law by which such acquisition was conditioned. * * *
 

 “We are here dealing not with a commodity alone, but with a commodity plus the brand or trade-mark which it bears as evidence of its origin and of the quality of the commodity for which the brand or trade-mark stands. Appellants own the commodity; they do.not own the mark or the good will that the mark symbolizes. And good will is property in a very real sense, injury to which, like injury to any other species of property, is a proper subject for legislation. Good will is a valuable contributing aid to business — sometimes the most valuable contributing asset of the producer or distributor of commodities. And distinctive trade-marks, labels and brands, are legitimate aids to the creation or enlargement of such good will. It is well settled that the proprietor of the good will ‘is entitled to protection as against one who attempts to deprive him of the benefits resulting from the same, by using his labels and trade-mark without his consent and authority.’ McLean v. Fleming, 96 U.S. 245, 252, 24 L.Ed. 828 [831], ‘Courts afford redress or relief upon the ground that a party has a valuable interest in the good will of his trade or business, and in the trademarks adopted to maintain and extend it.’ Hanover Star Mill. Co. v. Metcalf, 240 U.S. 403, 412, 36 S.Ct. 357, 360, 60 L.Ed. 713 [717], The ownership of the good will, we repeat, remains unchanged, notwithstanding the commodity has been parted with. Section 2 of the act does not prevent a purchaser of the commodity bearing the mark from selling the commodity alone at any price he pleases. It interferes only when he sells with the aid of the good will of the vendor; and it interferes then only to protect that good will against injury. It proceeds upon the theory that the sale of identified goods at less than the price fixed by the owner of the mark or brand is an assault upon the good will, and constitutes what the statute denominates ‘unfair competition.’ See Liberty Warehouse Co. v. Burley Tobacco Growers’ Co-op. Marketing Ass’n., 276 U.S. 71, 91, 92, 96, 97, 48 S.Ct. 291, 295, 296, 297, 72 L.Ed. 473 [480-483]. There is nothing in the act to preclude the purchaser from removing the mark or brand from the commodity — thus separating the physical property, which he owns, from the good will, which is the property of another — and then selling the commodity at his own price, provided he can do so without utilizing the good will of the latter as an aid to that end.
 

 “There is a great body of fact and opinion tending to show that price cutting by retail dealers is not only injurious to the good will and business of the producer and distributor of identified goods, but injurious to the general public as well. The evidence to that effect is voluminous; but it would serve no useful purpose to review the evidence or to enlarge further upon the subject. True, there is evidence, opinion and argument to the contrary; but it does not concern us to determine where the weight lies. We need say no more than that the question may be regarded as fairly open to differences of
 
 *980
 
 opinion. The legislation here in question proceeds upon the former and not the latter view; and the legislative determination in that respect, in the circumstances here disclosed, is conclusive so far as this court is concerned. Where the question of what the facts establish is a fairly-debatable one, we accept and carry into effect the opinion of the legislature. Radice v. New York, 264 U.S. 292, 294, 44 S.Ct. 325, 326, 68 L.Ed. 690 [694]. Zahn v. Board of Public Works, 274 U.S. 325, 328, 47 S.Ct. 594, 595, 71 L.Ed. 1074 [1076], and cases cited.”
 

 The state courts have generally accepted the rule established by the fair trade acts, recognizing vertical contracts of the nature involved herein. Some of the state courts have entertained the view that agreements of this nature do not restrain trade, but, to the contrary, promote trade by the elimination of unfair price cutting. Almost all of the courts are of the view, as will be disclosed by a reading of the above-quoted decisions, that an economic question is involved, and statutes of this nature are a legitimate exercise of the police power. The Legislature is vested with a wide discretion in determining what the public interest requires and what measures are necessary to protect that interest. Even' in cases where there is a dispute as to whether or not an economic question is involved, and the Legislature has acted in respect thereto, the courts will not disturb this exercise of a legislative function. Carlton Sears et al. v. Western Thrift Stores of Olympia, Inc., 10 Wash.2d 372, 116 P.2d 756; Old Dear-born D. Co. v. Seagram-Distillers Corp., supra.
 

 “It is not, perhaps,' for us to say whether the means adopted to accomplish this purpose are the best and most efficient and least injurious to private interest. These are matters of legislative determination. It is sufficient, for judicial satisfaction, if the means are appropriate to the end, will operate toward its accomplishment, are so intended in good faith, and are not unwarrantably and unnecessarily oppressive.” State v. Schlemmer, 42 La.Ann. 1166, 8 So. 307, 308, 10 L.R.A. 135.
 

 “The police power is no longer limited to measures designed to protect life, safety, health, and morals of the citizens, but extends to measures designed to promote the public convenience and the general prosperity (People ex rel. v. Associated Oil Co., supra [211 Cal. 93, 294 P. 717]; Chicago, B. & Q. R. Co. v. Illinois, 200 U. S. 561, 26 S.Ct. 341, 50 L.Ed. 596, 4 Ann. Cas. 1175), and includes economic measures regulating competition (Northern Securities Co. v. United States, 193 U.S. 197, 24 S.Ct. 436, 48 L.Ed. 679; Nebbia v. New York, supra [291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940, 89 A.L.R. 1469]).” Max Factor & Co. v. Kunsman, 5 Cal.2d 446, 55 P.2d 177, 184.
 

 “The power of the state to promote the general welfare, to protect the health and morals of the people generally, is inherent in government. To that end, the state may regulate any business affected with a public interest.” Board of Barber Examiners of Louisiana v. Parker, 190 La. 214, 182 So, 485, 491.
 

 
 *982
 
 The constitutional provision prohibiting combinations in restraint of trade was never intended to operate as a restriction upon the Legislature in the exercise of its police power. There is nothing contained therein to indicate such an intention. Section 18 of Article XIX of our Constitution provides that the exercise of the police power shall never be abridged.
 

 From a mere reading of the decisions of the state courts, referred to herein, it is apparent that the doctrine laid down in the Dr. Miles case has never been generally accepted by the state courts. In some instances, it is expressly disapproved, and in others, it is distinguished. It is interesting to note that Congress did not approve of this rule as will be seen in the above-quoted excerpts in the Old Dearborn case. The Old Dearborn case was handed down in 1936. As will be seen, various bills were introduced in Congress prior to that time in an endeavor to relax the rule adopted in the Dr. Miles case. In 1937, the Sherman Act was amended by the Miller-Tydings Act. 15 U.S.C.A. § 1. The pertinent part of the Miller-Tydings Act reads as follows: “ * * * Provided, That nothing herein contained [sections 1-7 of this title] shall render illegal, contracts or agreements prescribing minimum prices for the resale of a commodity which bears, or the label or container of which bears, the trade mark, brand, or name of the producer or distributor of such commodity and which is in free and open competition with commodities of the same general class produced or distributed by others, when contracts or agreements of that description are lawful as applied to intrastate transactions, under any statute, law, or public policy now or hereafter in effect in any State, Territory, or the District of Columbia in which such resale is to be made, or to which the commodity is to be transported for such resale, * *
 

 It will be noted that the wording of the Sherman Act was not changed by the Tydings Act, but it was provided that nothing contained therein should render illegal vertical agreements of the nature involved herein. The Tydings Act appears to be more of a legislative interpretation of the Sherman Act than what is strictly regarded as an amendment. Moreover, from a reading of the Miller-Tydings Act, it will be seen that Congress recognized the right of the states, in the exercise of their police power, to enact statutes of the nature involved in the present case.
 

 It is not necessary for us to discuss any of the other authorities cited by the defendant except the case of United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 221, 60 S.Ct. 811, 84 L.Ed. 1129, for the reason that they have followed the same rule as that laid down in the Dr. Miles case. We have discussed the rule enunciated in the Dr. Miles case and have decided that it is not applicable. The defendant seems to rely on the Socony case as an authority that price fixing agreements are illegal per se. The statute involved herein, as we have pointed out above, is not a price fixing statute. The price restriction provision is merely the means adopted to carry out the legitimate purpose of the statute.
 

 
 *984
 
 For the reasons assigned, the judgment of the lower court is reversed and set aside, the exceptions overruled, and the consolidated cases are remanded to be proceeded with consistent with the views herein contained.
 

 McCALEB, J., recused.