JANVIER, Judge.
As stated in the reasons for judgment given by the Judge of the Civil District Court for the Parish of Orleans, “this action is brought by Dr. G. H. Tichenor Antiseptic Company, a Louisiana Corporation with its principal offices in New Orleans, against Schwegmann Brothers Giant Super Markets, a commercial partnership, and the individual partners thereof, asking for an injunction to prohibit the-defendants from advertising for sale,, offering for sale, and selling a product manufactured by the plaintiff, known as Dr. Tichenor’s, antiseptic, at prices less than the minimum retail prices set by the plaintiff in the-retail fair trade contract which- is annexed to the petition, or at prices less than those which may be shown in any' future minimum retail price schedule issued by the plaintiff in connection with contracts with other retail dealers, and from making any rebates, refunds, discounts or concessions of any kind or chaiacter for the purpose of, or which will result in, decreasing the minimum retail prices.”
The Louisiana Fair Trade Statute which is invoked by plaintiff is LSA-R.S. 51:391 et seq.
*504 There was judgment perpetuating the preliminary writ of injunction against respondents, restraining them from advertising, offering for sale, or selling Dr. Tiche-nor’s antiseptic at prices below the minimum retail prices set by the plaintiff under a certain fair trade contract which had been made with another retailer.
Respondents appealed devolutively to the Supreme Court of Louisiana which, finding that it was without appellate jurisdiction for the reason that the record did not show that there is in dispute a sum in excess of $2,000, and that the matter does not “fall within any other of the classes of cases of which this court (the Supreme Court) is given appellate jurisdiction * * transferred the matter to this Court.
When the case was argued before us, counsel for appellees directed our attention to many decisions of different courts, including the Supreme Court of Louisiana, the United States Circuit Court of Appeals for the Fifth Circuit, and the Supreme Court of the United States, and they asserted that those decisions, particularly Schwegmann Bros. Giant Super Markets v. Eli Lilly & Co., 1953, 5 Cir., 205 F.2d 788, certiorari denied 346 U.S. 856, 74 S.Ct. 71, 98 L.Ed. 369; Pepsodent Co. v. Krauss Co., 200 La. 959, 9 So.2d 303, and Old Dearborn Distributing Co. v. Seagram Distillers Corp., 299 U.S. 183, 57 S.Ct. 139, 81 L.Ed. 109, are decisive of the issues which are involved here. To those there may now be added Schwegmann Brothers Giant Super Markets v. Hoffmann-LaRoche, Inc., 5 Cir., 221 F.2d 326, in which the Supreme Court of the United States denied writs of certiorari. 76 S.Ct. 77.
Counsel for respondents, nevertheless, maintain that the Supreme Court of the United States, in a late expression on the subject, Schwegmann Bros. Giant Super Markets v. Calvert Distillers Corp., 341 U.S. 384, 71 S.Ct. 745, 95 L.Ed. 1035, evidenced a change in its views concerning the constitutionality vel non of such fair trade legislation ás is involved here, and indicated that such legislation contravenes certain provisions of the Federal Constitution and of the Constitution of Louisiana.
We see no reason to postpone until the end of our discussion an announcement of our conclusion on the subject, and therefore state now that we cannot agree with counsel for respondents and that we think that the Calvert case, supra, may be distinguished and that consequently, as a result of the decisions in the Pepsodent case, in the Old Dearborn case, in the Eli Lilly case, and in the Hoffmann-LaRoche case, the judgment of the Civil District Court in this case must be affirmed.
We find ourselves unable to distinguish the facts which appear and the law which was found to be applicable in the Eli Lilly case and in the Pepsodent case from the facts which are found here and the law which we think is applicable to those facts.
As we read Pepsodent, it, in unmistakable language, holds that the Louisiana Fair Trade Statute violates no provisions of the Constitution of Louisiana, and we think that the Eli Lilly decision clearly holds that, where such a statute does not contravene the provisions of the Constitution of the state of its enactment, such statute, as a result of the effect of the McGuire Act, 66 Stat. 631, 15 U.S.C.A. § 45 and note, Act of July 14, 1952, may be invoked to prevent the sale at retail of any fair traded article or product below the minimum price established in any contract, even though the retailer sought to be enjoined .may not have been a party to the contract.
So striking is the similarity of the Eli Lilly case and of the Pepsodent case to this case that we shall quote liberally from those decisions since we are not so vain as to believe that we are capable of presenting clearer statements and discussion of the issues than is found in these decisions.
In the Eli Lilly case the issue was stated as follows [205 F.2d 789]: “The essential facts are not in dispute. The appellants concede that the appellee’s fair trade prices *505 had been established by contracts entered into in accordance with the Louisiana Fair 'Trade Law; that appellee’s products were in fair and open competition with commodities of the same general class produced by others.; and that the appellants, themselves not signers of such a contract, willfully and knowingly disregarded the minimum prices established under contracts between the appellee and other Louisiana retailers. It was established also that the appellants had a uniform mark-up, employed no loss leaders, and indulged in no •otherwise predatory practices. The appellants planted their defense squarely upon -a challenge to the constitutionality of the Louisiana Fair Trade Law and a further ■challenge to the constitutionality of the McGuire Act.”
The Court of Appeals then said:
“The Louisiana Supreme Court has sustained the validity of the Louisiana Fair Trade Law, and its decision is conclusive, insofar as the State constitution is concerned. Pepsodent Co. v. Krauss Co., 200 La. 959, 9 So.2d 303.”
The contentions of the respondents there were stated by the Court as follows:
‘The appellants contend that the State or Federal act or both together amount to .an unconstitutional delegation of a legislative function, violate the due process • clause, offend the commerce clause, and stem from self-defeating statutory provisions.
“As to the Louisiana Fair Trade Law, the appellants say that it violates the due process clause of the Fourteenth Amendment to the United States Constitution, because it bears no substantial relation to -the public welfare, and because it delegates legislative power to private individuals.”
What is meant by the contention that the Louisiana Statute, together with the Mc■Guire Act, unconstitutionally delegates a legislative function and that there is a violation of the Due Process Clause and the Commerce Clause is easily understood.
The contention that there are self-defeat•ing statutory provisions in the Sherman Act as it is now amended by the Miller-Tydings Act, 15 U.S.C.A. § 1, and by the McGuire Act is this: Counsel say that the sole purpose of the Sherman Act was and is to prevent a group of manufacturers or wholesalers, or retailers who are on a horizontal level, from agreeing upon a price, and that if the McGuire amendment permits a manufacturer, by making a contract with one retailer providing that the produce will not be sold at a price below the minimum fixed in the contract to bind all other retailers, even those who are not parties to the contract, then the effect is to permit the manufacturer, by making a contract with one retailer, to effectually bring about a horizontal price fixing among all retailers and that this defeats the purpose of the Sherman Act.
We are unable to distinguish those contentions from the contentions presented here. Counsel for respondents, however, maintain that in Schwegmann Bros. v. Calvert Distillers Corp., supra, which is referred to in the Eli Lilly decision as the “Schwegmann opinion”, the Supreme Court of the United States which, in the Old Dearborn case, had clearly rejected those identical contentions, indicated a change of view and that, as a result of that decision, which we shall refer to as the “Calvert” decision, the conclusion reached in the Old Dearborn case was rendered obsolete. That identical contention was made in the Eli Lilly case and was rejected by the United States Circuit Court of Appeals for the Fifth Circuit and was obviously rejected by the Supreme Court of the United States when it refused a writ of certiorari which was applied for. That that identical contention was made is evidenced by the following quotation from the Eli Lilly case:
“Appellants’ grounds for questioning that the Old Dearborn casé controls here seem to be an assertion supported by various economic texts that the years of experience in the. fair trade acts since Old Dearborn have established that the real purpose of these Acts is not so much to protect the good will of the manufacturer or trade mark owner as it is to protect the retailer from competition with other retailers, and, *506 further, that the opinion in the Schweg-mann [Calvert] case ■* * * has rendered Old Dearborn obsolete.”
The Court then, explained the distinction between the Calvert case and the Old Dearborn case, and that the same distinction exists between the Calvert case and the case at bar.
In the Old Dearborn case and in the Eli Lilly case and in the Pepsodent case, as we have already said, all of the contentions here made were presented, and such legislation as is under attack by respondents was held to be constitutional, whereas in the Calvert case no constitutional question was presented. Note the following statement in the Eli Lilly case: “The Schwegmann [Calvert] opinion involved no constitutional question and, hence, did not refer to Old Dearborn.” ■
Counsel concede that no constitutional question was presented in the Calvert case, but they say that there is language in that decision which, by implication, indicates that there has been á change in the view of the Supreme Court of the United States as to the validity of such legislation.
We think that in the Eli Lilly decision the Court annihilated this contention in the following statement: “There is no implication in Schwegmann that Congressional approval of enforcement against non-signers would be unconstitutional, the implications of the opinion are to the contrary.” The Court had already said:
“The appellants rely strongly upon the claimed inconsistency in language between the Old Dearborn and Schwegmann opinions. The Schwegmann case referred to non-signers as being coerced, whereas Old Dearborn said that willful and knowing non-signers could fairly be treated as implied assenters. The Schwegmann opinion characterized the State Fair Trade Statute as involving price fixing, whereas Old Dearborn had said that the law was not primarily a price fixing statute. In comparing the two opinions, it must be borne in mind that Old Dearborn was dealing with questions of constitutionality, whereas the Schwegmann case was dealing only with statutory interpretation.”
It seems to us perfectly clear that every contention which is now made on behalf of the respondents appeared in the several cases cited, and that all that we are now asked to consider is whether these same contentions may be given new consideration because they are presented in new language.
It is very evident that the United States Circuit Court of Appeals for the Fifth Circuit is of the opinion that the decision of the Supreme Court in. Calvert has not rendered obsolete the decision in Old Dear-born and in Pepsodent, for, on April 22nd, 1955, long after the decision in Calvert, the Fifth Circuit rendered its opinion in the Eli Lilly case and later still in the ¡Hoffmann-LaRoche case, supra, in which it considered decisions which we have discussed and said [221 F.2d 328]:
“ * * * The applicable federal statute [McGuire Act] is the one that exempts the parties to this price-fixing contract from the prohibitions of the federal anti-trust statutes [Sherman Anti-Trust Act, as amended]. * * * ” (Brackets ours.)
The author of that opinion had dissented in the Eli Lilly case, but in the Hoffmann-LaRoche case said that he still retained the views expressed by him in his dissent in the Eli Lilly case, but that the result reached there must remain the law of the case “until overruled by this court en banc or by the Supreme Court on certiorari in a subsequent case.” On July 16th, 1955, the Supreme Court refused to grant a writ of certiorari in Hoffmann-LaRoche.
Since counsel for respondents have based their defense almost entirely on the contention that the Calvert decision amounts to an overruling of the Old Dearborn decision, at the risk of making this opinion unnecessarily long, we shall attempt to state again what the Fifth Circuit showed so clearly in the Calvert decision, that is, why the Calvert decision cannot be con *507 sidered as an overruling of the Old Dear-born decision.
Originally the Sherman Anti-Trust Act, Act of July 2, 1890, c. 647, § 1, 26 Stat. 209, was held to prohibit any system of contracts between manufacturers and wholesalers or retail merchants which had as its object the controlling of prices of sales by all such dealers by fixing the amount which could be charged to the ultimate consumer. See Dr. Miles Medical Co. v. John D. Park & Sons Co., 220 U.S. 373, 31 S.Ct. 376, 383, 55 L.Ed. 502, in which the Supreme Court said:
“Nor can the manufacturer by rule and notice, in the absence of contract or statutory right, even though the restriction be known to purchasers, fix prices for future sales.”
Note the words “in the absence of contract or statutory right”.
In the Old Dearborn decision the Supreme Court upheld the right to enforce State fair trade statutes in intrastate commerce whether the resale was by the contractor or a non-contractor. This resulted from the Court’s interpretation of the Miller-Tydings Act, amending the Sherman Anti-Trust Act, Act of July 2, 1890, c. 647, § 1, 26 Stat. 209, Act of Aug. 17, 1937, c. 690, Title VIII, 50 Stat. 693, 15 U.S.C.A. § I-
In the Calvert case, supra, it was contended that the Miller-Tydings amendment to the Sherman Anti-Trust Act should be interpreted as permitting such laws as the Louisiana Fair Trade Statute to have application against any non-contractors whether in interstate or intrastate commerce. All that was involved there (Calvert case) was the interpretation of the Miller-Tydings amendment and all that the Supreme Court said was that the Miller-Tydings Act could not be interpreted as a grant by Congress of the right to enforce such state legislation in interstate commerce against non-contracting parties. And note that even in that decision the Court said that such statutes could not be enforced in interstate commerce (“absent approval by Congress”), clearly indicating that if there had then been such legislation as the McGuire Act, a different result would have been arrived at.
As a result of that decision (Calvert, May 21, 1951), on July 14, 1952, the Congress of the United States enacted the McGuire Act, 66 Stat. 631, 632, 15 U.S.C.A. § 45, which was unquestionably adopted to permit the result which, in the Calvert case, the Supreme Court had held could not be obtained under the Miller-Tydings amendment. The purpose of the McGuire Act is stated as follows:
“It is the purpose of this Act to protect the rights of States under the United States Constitution to regulate their internal affairs and more particularly to enact statutes and laws, and to adopt policies, which authorize contracts and agreements prescribing minimum or stipulated prices for the resale of commodities and to extend the minimum or stipulated prices prescribed by such contracts and agreements to persons who are not parties thereto. It is the further purpose of this Act to permit such statutes, laws, and public policies to apply to commodities, contracts, agreements, and activities in or affecting interstate or foreign • commerce.” 15 U.S.C.A. § 45 note, Section 1.
Therefore when the McGuire Act had been passed and became enforceable and the Supreme Court refused to grant writs of certiorari in the Eli Lilly case and later in the Hoffmann-LaRoche case, we think that it definitely set at rest the question, and that so long as the Supreme Court of the State of Louisiana holds the State statute to be constitutional, there can be no overruling of those decisions. Certainly not by this Court.
Two further contentions on behalf of respondent are made. One of them has been definitely settled in the cases from which we have so liberally quoted, and the other by the Supreme Court of the United States in In re Rahrer, 140 U.S. 545, 11 *508 S.Ct. 865, 870, 35 L.Ed. 572. One of the contentions is that the Louisiana Fair Trade Statute was unconstitutional when enacted and that the McGuire Act, if it made such legislation constitutional, came after the enactment of the Louisiana Fair Trade Law, and that therefore the Louisiana law, being unconstitutional when enacted, could not he effective unless re-enacted after the passage of the McGuire Act.
This identical contention was considered and disposed of by the Supreme Court in In re Rahrer, supra. There the Supreme Court considered a similar contention. A state, statute was held to be violative of certain constitutional provisions if construed as having effect upon imports. There was no doubt of its constitutionality so far as it affected domestic property. Another act of Congress was later passed for the purpose of permitting the former act to affect imports. It was contended that since the first act when passed purported to affect imports, it was unconstitutional when passed and that after the Congressional act made it possible for a State to pass such a statute it could not be given effect unless re-enacted after the passage of the Act of Congress. The Supreme Court said:
“This is not the case of a law enacted in the unauthorized exercise of a power exclusively confided to congress, but of a law which it was competent for the state to pass, but which could not operate upon articles occupying a certain situation until the passage of the act of congress. That act in terms removed the obstacle, and we perceive no adequate ground for adjudging that a re-enactment of the state law was required before it could have the effect upon imported which it had always had upon domestic property.”
The other contention is that there is no provision in the Louisiana Fair Trade Statute LSA-R.S. 51:391, which requires that the' contract under which such an injunction might be sought must be made by the owner of the trade mark. That contention also was presented in the Eli Lilly case and, insofar as that case was concerned, was disposed of in the following; language [205 F.2d 792]:
“Appellants argue that there is no provision in the Louisiana Fair Trade Law requiring that fair trade contracts be made by the trade mark or brand owner himself, and that fair trade laws could not constitutionally require non-signers to observe minimum prices stipulated without participation or authorization by the trade mark or brand owner. That argument is addressed to-a hypothetical case * * *. We are dealing- in this case with fair trade prices established by contracts to which the trade mark owner, the appellee, is. a party. See Alabama State Federation of Labor v. McAdory, 325 U.S. 450, 462, 65 S.Ct. 1384, 89 L.Ed. 1725; Rescue Army v. Municipal Court of City of Los Angeles, 331 U.S. 549, 568, et seq., 67 S.Ct. 1409, 91 L.Ed. 1666; Watson v. Buck, 313 U.S. 387, 401-402, 61 S.Ct. 962, 85 L.Ed. 1416.”
We may say the same here. Here the-contract was made by the actual manufacturer, the brand owner, the owner of the trade mark.
The judgment appealed from is affirmed', at the cost of appellants.
Affirmed.