90 So.2d 343

## DR. G. H. TICHENOR ANTISEPTIC COMPANY

v.

## SCHWEGMANN BROTHERS GIANT SUPER MARKETS et al.

No. 42823.

June 29, 1956.

Rehearing Denied Sept. 28, 1956.

Wisdom, Stone, Pigman & Benjamin, New Orleans, for appellants.

Wilson, Abramson & Maroun, Shreveport, Henican, James & Cleveland, New Orleans, Sumter D. Marks, Jr., Cicero C. Sessions, and Harry McCall, Jr., New Orleans, amici curiae.

Jones, Walker, Waechter, Dreux & Poitevent, A. J. Waechter, Jr., and Lucius F. Suthon, New Orleans, for appellees.

McCALEB, Justice.

This matter, which comes to us on a writ of certiorari granted to defendants, involves the constitutionality of the Louisiana Fair Trade Law (R.S. 51:391 et seq.). The suit was instituted by Dr. G. H. Tichenor Antiseptic Company, a Louisiana corporation, to enjoin Schwegmann Brothers Giant Super Markets, a commercial partnership, and the partners thereof, from advertising for sale, offering for sale, or selling a product manufactured by plaintiff, known as Dr. Tichenor's Antiseptic, at prices less than the minimum retail prices set by plaintiff in the retail fair trade contract or at prices less than those which might be shown in any future mini-

mum retail price schedule issued by plaintiff in connection with contracts with other retail dealers; and from making any rebates, refunds, discounts or concessions of any kind or character for the purpose of, or which would result in, decreasing the said minimum retail prices.

The district court perpetuated a preliminary injunction issued against defendants, restraining them from advertising, offering for sale or selling Dr. Tichenor's Antiseptic at less than the minimum retail prices established pursuant to R.S. 51:391 et seq.

Defendants appealed to this Court which, finding itself to be without appellate jurisdiction, transferred the case to the Court of Appeal for the Parish of Orleans. See 227 La. 233, 79 So.2d 77.

The Court of Appeal affirmed the judgment of the lower court, relying largely upon the decisions in Pepsodent Co. v. Krauss Co., 200 La. 959, 9 So.2d 303; Schwegmann Bros. Giant Super Markets v. Eli Lilly & Co., 5 Cir., 205 F.2d 788, certiorari denied 346 U.S. 856, 74 S.Ct. 71, 98 L.Ed. 369, rehearing denied 346 U.S. 905, 74 S.Ct. 217, 98 L.Ed. 404; Schwegmann Bros. Giant Super Markets v. Hoffmann-La Roche, Inc., 5 Cir., 221 F.2d 326, certiorari denied 350 U.S. 839, 76 S.Ct. 77, 100 L.Ed.

— and Old Dearborn Distributing Co. v. Seagram-Distillers Corp., 299 U.S. 183, 57 S.Ct. 139, 81 L.Ed. 109. See 83 So.2d 502.

The facts in the case are not disputed. Plaintiff fixed a fair trade retail price on its antiseptic by contract with a drug store in New Orleans, a contract to which defendants were not made parties. The antiseptic, bearing the trade-mark, label and brand name of Dr. Tichenor's Antiseptic, was knowingly and wilfully advertised and sold by defendants at less than the minimum fair trade price. It is admitted that the product is in fair and open competition with commodities of the same general class produced by others and that the minimum resale price was established pursuant to the provisions of the Louisiana Fair Trade Law.

Defendants vigorously assail the so-called "nonsigner clause" [1] of the law as unconstitutional in that it unlawfully delegates the legislative power of price fixing to private persons in violation of Section 1 of Article 3 of the Louisiana Constitution; in that it violates the due process clause of Section 2 of Article 1 of the Louisiana Constitution because the statutory form of the delegation is arbitrary and unreasonable; in that it violates due process

1. The Louisiana Fair Trade Law, reproduced in its entirety later in this opinion, consists principally of a *contract clause*, providing that a contract shall not be invalid by reason of a stipulated minimum price, and a *nonsigner clause*, which makes the stipulated resale price binding on all persons with notice, even non-contracting retailers.

because there is no real and substantial relationship between fair trade price fixing and the public welfare and because the means adopted are not reasonable and appropriate for the alleged purpose of the statute; in that the statute was void when enacted, being in conflict with the Sherman Anti-Trust Law,[2] and is still void, never having been reenacted; and in that the nonsigner clause contradicts the prohibition against horizontal price fixing in the statute and thereby renders the law self-defeating and meaningless. Finally, defendants contend that the McGuire Act[3] (a) unlawfully delegates legislative power to the states and to private persons in violation of Article 1, Section 1 of the United States Constitution; (b) unlawfully abdicates to the states congressional power over interstate commerce in violation of Article 1, Section 8; and (c) violates the due process clause of the Fifth and Fourteenth Amendments.

The provisions of the Louisiana Fair Trade Law (R.S. 51:391 et seq.), first enacted as Act 13 of 1936, are as follows:

"§ 391. *Producer and commodity defined*

"As used in this Sub-part:

" 'Producer' means grower, baker, maker, manufacturer, or publisher.

" 'Commodity' means any subject of commerce.

"§ 392. *Contracts restricting resale price valid*

"No contract, relating to the sale or resale of a commodity which bears, or the label or container of which bears, the trade mark, brand, or name of the producer of the commodity and which is in fair and open competition with commodities of the same general class produced by others, shall violate any law of this state by reason of any of the following provisions which may be contained in the contract:

"(1) That the vendee shall not resell the commodity at less than the minimum price stipulated by the vendor;

"(2) That the vendee or producer require in delivery to whom he may resell the commodity, an agreement that the second vendee will not, in turn, resell at less than the minimum price stipulated by the vendor or by the vendee.

"§ 393. *Exceptions to contracts*

"The provisions authorized in a contract by R.S. 51:392 shall not apply in the following cases:

---

2. Act of July 2, 1890, 26 Statutes 209, chap. 647, 15 U.S.C.A. § 1.
3. Act of July 14, 1952, 82nd Congress, 2nd Session, 66 Statutes 631, 632, 15 U.S.

C.A. § 45. This Act, often referred to as the Federal Fair Trade Act, was enacted as enabling legislation for the various state fair trade statutes.

"(1) In closing out the owner's stock for the purpose of discontinuing delivery of the commodity.

"(2) When the goods are damaged or deteriorated in quality, and notice is given to the public;

"(3) Where an officer is acting under the orders of court.

"§ 394. *Breach of Contract; unfair competition*

"Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the minimum price stipulated in any contract entered into pursuant to the provision of R.S. 51:392, whether the person so advertising, offering for sale, or selling is or is not a party to the contract, is unfair competition and is actionable by any person damaged.

"§ 395. *Exemptions*

"This Sub-part shall not apply to any contract between producers, or between wholesalers, or between retailers as to sale or resale prices.

"§ 396. *Name of Sub-part*

"This Sub-part may be cited as 'Fair Trade Law'."

Before considering the various allegations of unconstitutionality presented by defendants, we deem it appropriate to briefly review the jurisprudential history of fair trade legislation, with particular regard to the Louisiana Fair Trade Law.

In 1911, prior to the enactment of any fair trade statutes,[4] the Supreme Court of the United States held, in Dr. Miles Medical Co. v. John D. Park & Sons Co., 220 U.S. 373, 31 S.Ct. 376, 55 L.Ed. 502, that a system of contracts between manufacturers and wholesale and retail merchants fixing the amount which the consumer should pay amounted to an unlawful restraint of trade, invalid at common law and, so far as interstate commerce was affected, invalid under the Sherman Anti-Trust Act. The products involved in that case were proprietary medicines identified by distinctive packages, labels and trademarks. The same result as to patented articles was reached in Boston Store of Chicago v. American Graphophone Co., 246 U.S. 8, 38 S.Ct. 257, 62 L.Ed. 551.

In 1936, the Supreme Court of the United States was called upon to consider the constitutionality of the Fair Trade Act of Illinois (which is virtually identical to the Louisiana Fair Trade Law) in Old Dearborn Distributing Co. v. Seagram-Distillers Corp., 299 U.S. 183, 57 S.Ct. 139, 81 L.Ed. 109. The validity of the Act was upheld against attacks that it was a denial of due

4. The first Fair Trade Law was passed in California in 1931. It was amended in 1933 to include a nonsigner provision, West's Ann.Bus. & Prof.Code, § 16900 et seq.

process of law and equal protection of the laws in violation of the Fourteenth Amendment to the Federal Constitution. The Court held, in its discussion of due process, that the statute did not amount to an unlawful delegation of power to private persons to control the property of others.

In 1937 Congress enacted the Miller-Tydings Act,[5] an amendment to the Sherman Anti-Trust Act which exempted contracts or agreements prescribing minimum prices for the resale of trade-marked commodities from the prohibitions of the Sherman Act where such contracts or agreements are lawful as applied to intrastate transactions under local law.

In 1942, this Court upheld the Louisiana Fair Trade Act, Act 13 of 1936 (now R.S. 51:391 et seq.), in Pepsodent Co. v. Krauss Co., 200 La. 959, 9 So.2d 303, rejecting the argument that the Act was in violation of Section 14 of Article 19 of the State Constitution which prohibits combinations in restraint of trade. We also noted with approval the Old Dearborn decision holding such a statute to violate neither the equal protection nor the due process clause of the Federal Constitution.

In 1951, in Schwegmann Bros. v. Calvert Distillers Corp., 341 U.S. 384, 71 S.Ct. 745, 95 L.Ed. 1035 (hereinafter referred to as the Schwegmann case), the Supreme Court found the Louisiana Fair Trade Law to be violative of the Sherman Anti-Trust Act since the Miller-Tydings Act, while authorizing contracts or agreements prescribing minimum resale prices, did not authorize price fixing by compulsion on those persons not parties to the contracts or agreements. It should be noted that this opinion contained no discussion of the constitutionality of the Louisiana Fair Trade Law and made no reference to the Old Dearborn decision since Old Dearborn was almost entirely restricted to a consideration of the constitutionality of the law rather than of any conflict between it and the Sherman Act.

In 1952, close on the heels of the Schwegmann decision, Congress passed the McGuire Act which recognized the rights of the States to authorize contracts and agreements prescribing minimum or stipulated prices for the resale of commodities and to extend the minimum or stipulated prices prescribed by such contracts and agreements to persons who are not parties thereto. In other words, the McGuire Act, sometimes referred to as the Federal Fair Trade Act, resolved the conflict existing theretofore between the Sherman Act and the nonsigner clauses of the various state fair trade laws.

In 1953,[6] in light of the McGuire Act, the United States Circuit Court of Ap-

---

5. Act of August 17, 1937, 50 Statutes 693, chap. 690, 15 U.S.C.A. § 1.

6. Forty-five states have enacted fair trade legislation virtually identical to the Lou-

peals for the Fifth Circuit sustained the validity of the Louisiana Fair Trade Law, largely on the basis of the Old Dearborn decision, noting that the primary purpose of the McGuire Act was to change, as to future cases, the result reached in the Schwegmann case. Schwegmann Bros. Giant Super Markets v. Eli Lilly & Co., supra. See also Schwegmann Bros. Giant Super Markets v. Hoffmann-La Roche, Inc., supra.

We shall now address ourselves to what we consider to be the most significant of defendants' contentions, that is, that the

nonsigner provision of the Fair Trade Law (R.S. 51:394) constitutes an unlawful delegation of legislative power to private persons in violation of Article 3, Section 1, of the State Constitution.

■ It is fundamental "that legislative power, conferred under constitutional provisions, cannot be delegated by the Legislature either to the people or to any other body or authority". City of Alexandria v. Alexandria Fire Fighters Ass'n, 220 La. 754, 57 So.2d 673, 674, and authorities there cited. And, while there are certain excep-.

---

isiana Fair Trade Law. Since 1952, fair trade laws have been held unconstitutional in twelve states (in six by courts of last resort): Union Carbide & Carbon Corp. v. White River Distributors, 224 Ark. 558, 275 S.W.2d 455; Olin Mathieson Chemical Corp. v. Francis, 301 P.2d 139 (Colo.); Sterling Drug, Inc. v. Eckerd's of Tampa, Fla., 71 So.2d 156 and Miles Laboratories v. Eckerd, Fla., 73 So. 2d 680; Grayson-Robinson Stores v. Oneida, Limited, 209 Ga. 613, 75 S.E.2d 161, certiorari denied 346 U.S. 823, 74 S.Ct. 39, 98 L.Ed. 348 and Cox v. General Electric Co., 211 Ga. 286, 85 S.E.2d 514; Bargain Barn, Inc., v. Arvin Industries, Inc., CCH 1955 Trade Cases, Par. 68,074 (Ind.); General Electric Co. v. American Buyers Cooperative, Inc., CCH 1956 Trade Cases, Par. 68,341 (Ky.); Shakespeare Co. v. Lippman's Tool Shop Sporting Goods Co., 334 Mich. 109, 54 N.W.2d 268; McGraw Electric Co. v. Lewis & Smith Drug Co., 159 Neb. 703, 68 N.W.2d 608 and General Electric Co. v. J. L. Brandeis & Sons, 159 Neb. 736, 68 N.W.2d 620; General Electric Co. v. Wahle, 296 P.2d 635 (Or.); Rogers-Kent, Inc. v. Westinghouse Electric Corp., CCH 1955 Trade Cases, Par. 68,084 (S.C.); General Electric Co. v. Thrifty Sales,

Inc., affirmed 301 P.2d 741 (Utah) and Benrus Watch Co. v. Smith-Williams Jewelers, CCH 1955 Trade Cases, Par. 67,985, affirmed on other grounds Benrus Watch Co. v. Kirsch, 198 Va. 94, 92 S.E. 2d 384. On the other hand, since 1952 the courts of nine states (in all but one instance courts of last resort) have upheld the constitutionality of fair trade laws: Scovill Manufacturing Co. v. Skaggs Pay Less Drug Stores, 45 Cal.2d 281, 291 P.2d 936; General Electric Co. v. Klein, 106 A.2d 206 (Del.); Home Utilities Co. v. Revere Copper & Brass, 122 A.2d 109 (Md.); General Electric Co. v. Kimball Jewelers, 132 N.E.2d 652 (Mass.); Lionel Corp. v. Grayson-Robinson Stores, 15 N.J. 191, 104 A.2d 304, appeal dismissed 348 U.S. 859, 75 S.Ct. 87, 99 L.Ed. 677 (N.J.); General Electric Co. v. S. Klein-on-the-Square, Sup., 121 N.Y.S.2d 37 and General Electric Co. v. Masters, Inc., 307 N.Y. 229, 120 N.E.2d 802, appeal dismissed 348 U.S. 892, 75 S.Ct. 215, 99 L.Ed. 701 (N.Y.); Union Carbide & Carbon Corp. v. Bargain Fair, 130 N.E. 2d 255 (Ohio Com.Pl.); Burche Co. v. General Electric Co., 382 Pa. 370, 115 A. 2d 361 (Pa.) and Bulova Watch Co. v. Anderson, 270 Wis. 21, 70 N.W.2d 243.

tions to this principle of constitutional law, e. g., delegation by the Legislature of a part of its power to municipal corporations and other public bodies and delegation of power not purely legislative in nature to administrative officers or boards, under proper safeguards, to determine facts upon which the law makes or intends to make its own action depend, courts will not hesitate to strike down legislation vesting in private persons the right to determine the state of things upon which the effect of the law depends as this is legislative delegation in its most obnoxious form. See Carter v. Carter Coal Co., 298 U.S. 238, 56 S.Ct. 855, 80 L.Ed. 1160 and City of Alexandria v. Alexandria Fire Fighters Ass'n, supra.[7]

■ It also cannot be seriously disputed that the right of an individual to engage in a lawful business and to fix the price at which he disposes of his own property is guaranteed by the due process clauses of both the State and Federal Constitutions. See Allgeyer v. State of Louisiana, 165 U.S. 578, 17 S.Ct. 427, 41 L.Ed. 832; Adams v. Tanner, 244 U.S. 590, 37 S.Ct. 662, 61 L.Ed. 1336; Fairmont Creamery Co. v. State of Minnesota, 274 U.S. 1, 47 S.Ct. 506, 71 L.Ed. 893 and New State Ice Co. v. Liebmann, 285 U.S. 262,

52 S.Ct. 371, 76 L.Ed. 747. This inherent right yields only in instances where its untrammeled exercise clashes with the general public interest and in such cases the Legislature may exert its police power in the interest of the general welfare. But the power to regulate private business by coercive price fixing is a legislative function which may be invoked only under special circumstances, that is, when the measure is seen to have a reasonable relation to the public welfare and is neither arbitrary nor discriminatory. Nebbia v. People of State of New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940, 89 A.L.R. 1469; Board of Barber Examiners of Louisiana v. Parker, 190 La. 214, 182 So. 485; Louisiana Wholesale Distributors Ass'n v. Rosenzweig, 214 La. 1, 36 So.2d 403 and Schwegmann Bros. v. Louisiana Board of A. B. C., 216 La. 148, 43 So.2d 248, 14 A.L.R.2d 680.

In the light of the foregoing, it is manifest, if the nonsigner provision of the Louisiana Fair Trade Law sought to be enforced in this case is a price-fixing measure, there is an unlawful delegation of power because it is the manufacturer or producer who fixes the minimum price and not the Legislature itself, as in the case of the "Unfair Sales Act" (Act No. 338 of

7. The Supreme Court of the United States has held it to be an unlawful delegation of legislative power for a federal statute to confer price-fixing power upon private associations. A. L. A. Schechter Poultry Corp. v. United States, 295 U.S. 495, 55 S.Ct. 837, 853, 79 L.Ed. 1570, where Mr. Justice Cardozo, in a concurring opinion, described the NRA codes as "delegation running riot".

1940, as amended, R.S. 51:421 et seq., sometimes called the "Loss Leader Law"), the constitutionality of which was upheld in Louisiana Wholesale Distributors Ass'n **v.** Rosenzweig, supra.

However, it is the plaintiff's contention that there is no unlawful delegation here since nothing has been delegated by the Legislature, the Fair Trade Law merely legalizing conditions which a producer may attach to the resale of his product provided his good will is utilized in making such resale, while also binding others to respect the conditions imposed and restraining them from appropriating to themselves the producer's good will as represented by his trade-mark and name and exploiting such good will at the expense of the producer or those with whom the producer has contracted. Various decisions are cited in support of this proposition.[8]

In addition, counsel for plaintiff maintain, and the Court of Appeal agreed with them, that the question of an unlawful delegation of power has been foreclosed, at least inferentially, by Pepsodent Co. v. Krauss Co., supra, as we there expressed our unqualified approval of the decision in the Old Dearborn case, which disposed of a similar contention adversely to defendants. Schwegmann Bros. Giant Super Markets v. Eli Lilly & Co. is said to support this position.

■ We reject immediately the last stated claim of counsel as we find that the question whether the nonsigner provision of the Fair Trade Law constitutes an unlawful delegation of legislative power has never before been adjudicated in this State. Nor was it adjudicated in Old Dearborn or the Eli Lilly cases. It is true that, in Old Dearborn, the Supreme Court stated that the Fair Trade Law of Illinois did not unlawfully delegate power to private persons to control the property of others but this finding was made anent the due process clause of the Federal Constitution rather than as to unlawful delegation of power in violation of the Illinois Constitution. Indeed, the Supreme Court is powerless to resolve conflicts between state laws and state constitutions. See Douglas v. Noble, 261 U.S. 165, 43 S.Ct. 303, 67 L.Ed. 590.

In Pepsodent Co. v. Krauss, as heretofore stated, the only constitutional attack made upon the Fair Trade Law was that its provisions permitted combinations in restraint of trade in violation of Section 14 of Article 19 of the State Constitution. And, in the Eli Lilly case, the United States Circuit Court of Appeals merely disposed of the contention that the Louisiana Fair

---

8. E. g., General Electric Co. v. S. Klein-on-the-Square, Sup., 121 N.Y.S.2d 37; Burche Co. v. General Electric Co., 382 Pa. 370, 115 A.2d 361; Lilly & Co. v. Saunders, 216 N.C. 163, 4 S.E.2d 528, 125 A.L.R. 1308 and Old Dearborn Distributing Co. v. Seagram-Distillers Corp., 299 U.S. 183, 57 S.Ct. 139, 81 L.Ed. 109.

Trade Law violated the due process clause of the Fourteenth Amendment to the Federal Constitution in that it delegated legislative power to private individuals; the Court [205 F.2d 790] did not discuss the State Constitution at all, observing that "The Louisiana Supreme Court has sustained the validity of the Louisiana Fair Trade Law, and its decision is conclusive, insofar as the State constitution is concerned. Pepsodent Co. v. Krauss Co., 200 La. 959, 9 So.2d 303".[9]

The other contention of counsel for plaintiff, that the Fair Trade Law is not a price-fixing statute and does not delegate power to the producer to fix prices as to nonsigners, is partially founded on certain language employed in the Old Dearborn decision where the court stated, in reference to the Fair Trade Act of Illinois, that [229 U.S. 183, 57 S.Ct. 144]:

> "The primary aim of the law is to protect the property—namely, the good will—of the producer, which he still owns. The price restriction is adopted as an appropriate means to that perfectly legitimate end, and not as an end in itself."

Counsel further say that, since the above-quoted reasoning was cited approvingly in Pepsodent Co. v. Krauss where it was specifically stated that the Fair Trade Law is not a price-fixing statute, this court has

disposed of defendants' claim that the law delegates to the producer the power to establish a minimum resale price under the nonsigner clause.

This contention cannot be sustained. First of all, the observation of the court in Pepsodent Co. v. Krauss that the Fair Trade Law is not a price-fixing statute must be considered in context with the issue for decision there, i. e., that vertical price fixing, as distinguished from horizontal price fixing, did not tend to create a monopoly or restraint of trade as proscribed by the State Constitution. It was never the intent of this Court to hold that a statute, which gives a producer or manufacturer the right to control the minimum resale price of his products as against persons who have no contractual relation with him, is not coercive price-fixing legislation. The extent of our ruling, although the language used is undeniably broader, was that vertical price fixing is not necessarily monopolistic price fixing.

 The Supreme Court of the United States expressed, in no uncertain terms, its opinion that our Fair Trade Law is a price-fixing statute in Schwegmann Bros. v. Calvert Distillers Corp., thus repudiating the contrary view recorded in the Old Dearborn case some fifteen years before. Although the Schwegmann decision did not

---

9. True enough, Pepsodent Co. v. Krauss sustained the validity of the Fair Trade Law but, as we have above pointed out, only on the ground that it did not violate Section 14 of Article 19 of the State Constitution.

refer to Old Dearborn, the two cases dealing with different aspects of fair trade legislation, it is to be observed that the Court, in the Schwegmann case, used the term "price fixing" some eighteen times in reference to the Louisiana Fair Trade Law. We quote two of the more forceful sentiments of that opinion [341 U.S. 384, 71 S.Ct. 747]:

> "When they seek, however, to impose price fixing on persons who have not contracted or agreed to the scheme, the situation is vastly different. That is not price fixing by contract or agreement; that is price fixing by compulsion.
>
> \* \* \* \* \* \*
>
> "Contracts or agreements convey the idea of a cooperative arrangement, not a program whereby recalcitrants are dragged in by the heels and compelled to submit to price fixing."

The foregoing statements are in keeping with realism and our views are in accord therewith.

In insisting that the nonsigner clause is not price-fixing legislation, counsel for plaintiff revert to the theme of Old Dearborn that, since the purpose of fair trade legislation is to protect brand or trademark commodities, the statute does not deny due process in permitting producers· to enforce a minimum price as to nonsigning retailers, because a producer has the right to thus protect his good will against a retailer who, though he buys the product for resale, does not thereby acquire the producer's good will, symbolized by the trade-mark.

This argument of counsel properly addresses itself to the question of whether the nonsigner provision of the statute affords due process of law; it hardly furnishes an answer to the contention that the law delegates to the producer the right to fix minimum prices by compulsion. Indeed, what counsel are undoubtedly claiming is that the fact that the goods are labelled or branded creates some sort of implied covenant, condition or servitude running with them which takes the form of a minimum price and is enforceable against any person acquiring the goods for resale, even though there be no privity of contract between him and the producer.

■ Such an argument simply ignores the basic principles of the civil law relative to the ownership of property, particularly movable property.[10] Article 490 of the

---

10. Equitable servitudes running with a movable and restraints on the alienation of movable property are disfavored under the public policy of this State. Once a movable is sold, the seller relinquishes all interest therein and conditional sales, whereby the vendor retains title to the property, are not recognized in Louisiana. Barber Asphalt Paving Co. v. St. Louis Cypress Co., 121 La. 152, 46 So. 193; Lee Const. Co. v. L. M. Ray Const. Corp., 219 La. 246, 52 So.2d 841 and cases there cited. And, until 1912, chattel mortgages were unknown in this State.

Civil Code, defining perfect and imperfect ownership, clearly indicates that the ownership of movables is always perfect unless it is to terminate at a certain time or on a condition. Article 491 then declares that perfect ownership gives to the owner the right to use, enjoy and dispose of his property in the most unlimited manner, "provided it is not used in any way prohibited by laws or ordinances". Thus, there being no condition imposed on the use of plaintiff's commodities when acquired in the course of trade by persons with whom it is not in privity of contract, the only basis upon which plaintiff can insist upon compliance with the floor price fixed by it is the Fair Trade Law which, as we have found, has unconstitutionally delegated to plaintiff and other producers the legislative power to fix these prices.

Finally, in a supplemental brief, counsel for plaintiff proclaim that the Legislature is incapable of delegating power to fix prices since it, itself, has no such power and they conclude, therefore, that there can be no delegation of a power which has never existed.

■ This proposition seems to be based on the idea that the Legislature had the power only to *prohibit* the owner from establishing minimum resale prices on his property. At any rate, we find it unimpressive. It is our Constitution (Section 14 of Article 19) which prohibits monopolies and agreements in restraint of trade, the provisions of which are self-operative. The Legislature is without power to permit any price-fixing agreements contrary thereto. Thus it would appear that counsel, in arguing that the Legislature is without power to fix prices, are compromising their primary position as to the constitutionality of the Fair Trade Law—for, if the Legislature is impotent to fix the prices for certain trade-marked products in the exercise of its police power, then surely the fixing of such prices by private individuals is a most extreme deprivation of due process as to those persons buying such commodities for resale who were not made parties to the contract stipulating the minimum price. Throughout their argument, counsel repeatedly infer that, but for the anti-trust law, plaintiff had the right to impose some sort of lien or servitude on its commodities which would bear upon their free distribution by third parties not in privity of contract. As we have heretofore shown, such a lien or servitude or covenant running-with-the-article is not known to our law.

We hold that the Fair Trade Law of this State, as it applies to nonsigners of contracts entered into pursuant to its provisions, is unconstitutional and void, being in violation of Section 1 of Article 3 of the State Constitution. In view of this con-

clusion, it is unnecessary that we pass on the other questions presented by defendants.

The judgments of the district court and the Court of Appeal are, therefore, reversed and plaintiff's suit is dismissed at its costs.

HAMITER, J., concurs in the decree.