Zimmerman, J.
The so-called Ohio Fair Trade Act was originally adopted in 1936. Those sections of the Revised Code which are pertinent here are as follows:
Section 1333.06. “(A) No contract relating to the sale or resale of a commodity which bears, or the label, container, or content of which bears, the trademark, brand, or name of the producer or of the owner of such commodity and which is in fair and open competition with commodities of the same general class produced by others violates any law of this state by reason of any of the following provisions which may be contained in such contract:
“ (1) The buyer will not resell such commodity at less than the minimum price stipulated by the vendor;
“(2) The vendee or producer shall require any person to whom he may resell such commodity to agree that he will not, in turn, resell such commodity at less than the minimum price stipulated by such vendor or by such vendee.
Í < # * * 5 >
Section 1333.07. “Whoever knowingly and wilfully advertises, offers for sale, or sells any commodity at less than the minimum price stipulated in any contract entered into under Section 1333.06 of the Revised Code, whether said person advertising, offering for sale, or selling such commodity is or is not a party to such contract, is engaging in unfair competition and unfair trade practices and is liable to any person damaged thereby.”
Section 1333.08. “Whoever violates Sections 1333.05 to 1333.10, inclusive, of the Revised Code is liable to any retailer of such commodity or to any other person injured thereby, including the producer of such commodity. Suit may be brought for an injunction against such practice.”
It appears from the bill of exceptions that on March 8, 1954, plaintiff entered into a written contract with a retailer of Prestone, being one of some 13,000 dealers in Prestone in Ohio, whereby the retailer agreed not to sell Prestone at a price *184 lower than that specified in a schedule attached to the contract, namely at $2.95 per gallon in gallon cans, at $3.20 per gallon in quart cans, and at 80 cents per quart in quart cans.
Defendants had purchased Prestone from an undisclosed source at a price of $1.67 per gallon can and were selling it to customers, “over the counter” and without additional service, at $2.49. Such practice, on the claim that it represented a violation of the Pair Trade Act, precipitated the present action.
Specifically, defendants challenge the validity of Section 1333.07, Revised Code, quoted above.
During the 1930’s many of the states adopted fair trade acts identical or similar to the one enacted and now existing in Ohio. Those acts have come before the courts of the different states for examination frequently and often with diametrically opposite results. Although the decisions of the United States Supreme Court are not binding on the state courts in a matter of the kind now under examination, the earlier cases upholding the legislation often relied on the reasoning of the high federal court in Old Dearborn Distributing Co. v. Seagram Distillers Corp., 299 U. S., 183, 81 L. Ed., 109, 57 S. Ct., 139.
In recent years and in the light of present-day conditions, courts have become more critical of the fair trade acts and have invalidated parts of them with increasing frequency.
Basically, those cases approving the acts in toto proceeded on the theory that a producer of a trademarked product, who has expended money and effort in establishing it on the market at a specified selling price, ought not to be subjected to the injury which cut-rate sales would entail; that the ownership of a trademark and goodwill is a property right which the law should protect and is assertable against all who sell the producer’s products; and that price cutting is not only damaging to the goodwill and business of the producer but has a deleterious effect on the public as well. Also brought into the equation is the economic philosophy of the fair trade acts, which it is said bear a real and substantial relationship to the public welfare, and the proposition that their enactment is a matter for legislative determination in the exercise of the police power, with which the courts should not interfere.
On the other hand, the position taken by other courts is that the real effect of the fair trade acts is anticompetitive price *185 fixing rather than the protection of the goodwill of trademarked products. Goodwill should be measured by the price the goods can command in a competitive market and not by allowing the manufacturer to sell at a pegged retail price which he himself selects. In normal times, the inflexible price arrangements which the acts sanction are opposed to our traditional concepts of free competition for the benefit of the consuming public, and the clause binding those- who do not enter into a price-fixing contract with the manufacturer offends such concepts. Hence, the nonsigner clause interferes with the constitutional right of the owner of property to dispose of it as he pleases and represents the exercise of the police power for a private as opposed to a public purpose.
It would serve no useful purpose to discuss the pros and the cons of the matter in greater detail, since that has already been done in many cases.
Representative cases upholding fair trade acts in their entirety are Joseph Triner Corp. v. McNeil (1936), 363 Ill., 559, 2 N. E. (2d), 929, 104 A. L. R., 1435; Sears v. Western Thrift Stores of Olympia, Inc. (1941), 10 Wash. (2d), 372, 116 P. (2d), 756; Lionel Corp. v. Grayson-Robinson Stores, Inc. (1954), 15 N. J., 191, 104 A. (2d), 304; Scovill Mfg. Co. v. Skaggs Pay Less Drugs (1955), 45 Cal. (2d), 881, 291 P. (2d), 936; and Burche Co. v. General Electric Co. (1955), 382 Pa., 370, 115 A. (2d), 361.
Representative cases which have invalidated the nonsigner provisions of such acts are Union Carbide & Carbon Corp. v. White River Distributors, Inc. (1955), 224 Ark., 558, 275 S. W. (2d), 455; McGraw Electric Co. v. Lewis & Smith Drug Co., Inc. (1955), 159 Neb., 703, 68 N. W. (2d), 608; Olin Mathieson Chemical Corp. v. Francis (1956), 134 Colo., 160, 301 P. (2d), 139; Dr. G. H. Tichenor Antiseptic Co. v. Schwegmann Bros. Giant Super Markets (1956), 231 La., 51, 90 So. (2d), 343.; General Electric Co. v. Wahle (1956), 207 Ore., 302, 296 P. (2d), 635; and Skaggs Drug Center v. General Electric Co. (N. M., 1957), 315 P. (2d), 967.
Many manufacturers have abandoned reliance on the fair trade acts to stipulate the prices at which their trademarked products may be sold, realizing the difficulty of enforcement and the further facts that arbitrary price fixing is monopolistic *186 in character, has an anticompetitive effect on the economy and works to the disadvantage of the consuming public.
A majority of this court has reached the conclusion that Section 1333.07, Revised Code, which prohibits those who are not parties to the stipulated-price contract from selling trademarked items at a price lower than that stipulated by the manufacturer, is unreasonable and unenforceable and constitutes an unauthorized exercise of the police power in that there is no substantial relation to the public safety, morals or general welfare. Moreover, it contravenes the “due process” provision of the Ohio Bill of Rights by arbitrarily and monopolistically denying a seller, who has not entered into any price-fixing contract with the manufacturer, the privilege of disposing of his own property on terms of his own choosing, and in addition delegates legislative power and discretion to private persons.
The judgment of the Court of Appeals is, therefore, reversed and the cause remanded to that court with instructions to dissolve the injunction heretofore issued.

Judgment reversed.

Weygandt, C. J., Stewart, Matthias, Bell and Herbert, JJ., concur.