**MATRIX ESSENTIAL, INC.**

v.

**EMPORIUM DRUG MART, INC., et al.**

Civ. A. No. 89–2572–L.

United States District Court,
W.D. Louisiana,
Lafayette–Opelousas Division.

Feb. 15, 1991.

Baker & Hostetler, Theresa M. Gallion, Orlando, Fla., Louis Simon II, Laborde & Neuner, Lafayette, La., for plaintiff.

Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Joseph L. Lemoine, Jr., Lafayette, La., for defendants.

## RULING

NAUMAN S. SCOTT, District Judge.

Before the court is defendant Drug Emporium's Motion to Dismiss plaintiff Matrix Essential's (Matrix) Complaint pursuant to Fed.R.Civ.P. 12(b)(6), or, in the alternative, Motion for Summary Judgment.

Matrix manufactures and markets a diverse line of hair care products under its registered mark, Matrix. Matrix alleges that its products are designed to be used only in professional hair care salons by trained cosmetologists, or sold to salon clients with the advice of a trained cosmetologist. Consequently, Matrix sells its products to the public exclusively through professional hair care salons. In accordance with this policy, Matrix advertises its products as being available only in profes-

sional salons, and sells its products to the salons only through authorized distributors who are required to sign a "policy statement" in which the distributor agrees to abide by Matrix's policy of selling its products to the public only through professional salons. Finally, Matrix asserts that salons purchasing Matrix products do so with the understanding that the products are either to be used on the premises or sold directly to "legitimate" salon clients.[1]

Drug Emporium is a chain of retail drug stores that sell a variety of health and beauty aids. Despite Matrix's anti-diversion policy, Drug Emporium obtained[2] and sold for retain certain Matrix products.[3] Certain of these products stated on the label "Guaranteed Only When Purchased In Professional Salons," others contained the statement "Sold Only In Professional Salons," and some did not contain any such statement. Upon learning of Drug Emporium's sale of Matrix products, Matrix demanded that Drug Emporium cease and desist the unauthorized sales. Instead of ceasing, Drug Emporium posted a written disclaimer on the shelf accompanying the Matrix products. The disclaimer read:

### ATTENTION CUSTOMERS

YOU MAY WISH TO CONSULT YOU[R] HAIR CARE PROFESSIONAL WITH ANY PURCHASE OF A MATRIX ESSENTIAL PRODUCT BEARING THE NOTICE "FOR PROFESSIONAL USE ONLY" OR "SOLD ONLY IN PROFESSIONAL SALONS". DRUG EMPORIUM IS NOT AN AUTHORIZED DISTRIBUTOR OF MATRIX ESSENTIAL PRODUCTS BUT WE SHARE ITS APPARENT COMMITMENT TO SELLING QUALITY PRODUCTS.

Matrix seeks to enjoin Drug Emporium from future acquisition and sale of Matrix products and also seeks damages allegedly resulting from Drug Emporium's unauthorized sales of Matrix products. Under federal law, Matrix's suit alleges trademark infringement (Count I) and false designation of origin and false description or representation (Count II) under sections 32(1) and 43(a) of the Lanham Act, 15 U.S.C. § 1051, *et seq.* Under Louisiana law, Matrix's suit alleges "common law" trademark infringement and unfair competition (Count III), violation of an equitable servitude (Count IV), tortious interference with contractual and business relationships (Count V), and violation of the Unfair Trade Practices and Consumer Protection Law, La.Rev.Stat.Ann. § 51:1401 *et seq* (Count VI).

### I. *Counts I, II, and VI:*

■ Counts I, II, and VI focus on the same issue: Whether Drug Emporium's sale of genuine Matrix products is likely to cause confusion in the minds of potential buyers. Drug Emporium argues that Matrix cannot prove confusion because Drug Emporium sold only genuine Matrix products and did so with a disclaimer as to authorization from Matrix.

■ Generally, the sale of genuine goods does not constitute trademark infringement or unfair competition because confusion ordinarily does not arise when a genuine article bearing a true mark is sold. *See, e.g., Prestonettes, Inc. v. Coty,* 264 U.S. 359, 44 S.Ct. 350, 68 L.Ed. 731 (1924); *NEC Electronics v. Cal Circuit Abco,* 810 F.2d 1506, 1509 (9th Cir.), *cert. denied,* 484 U.S. 851, 108 S.Ct. 152, 98 L.Ed.2d 108

---

1. There is no evidence, however, that Matrix has any sort of formal, binding agreement with any of the salons which requires the salons to restrict sales to "legitimate" salon clients.

2. There is dispute as to the source of the products which Drug Emporium obtained. Matrix asserts that Drug Emporium obtained Matrix products from Ace Beauty Company and Amco Warehouse, Inc., two authorized Matrix distributors. Drug Emporium asserts, however, that it "has never purchased any Matrix brand goods from anyone with whom Matrix has a distribution contract."

3. According to Drug Emporium, it sold only those Matrix products which are intended for application by the consumer at home, such as shampoos, conditioners, styling gels, and hair sprays. Drug Emporium further claims that it did not obtain or sell any Matrix products requiring professional application such as hair dyes and permanents. Matrix does not appear to dispute these assertions.

(1987). Nonetheless, several courts have held that confusion can still arise if there has been a false suggestion of affiliation with, sponsorship by, approval or authorization of, the trademark owner. *See, e.g., Burger King Corp. v. Mason,* 710 F.2d 1480, 1492 (11th Cir.1983), *cert. denied,* 465 U.S. 1102, 104 S.Ct. 1599, 80 L.Ed.2d 130 (1984); *Professional Golfers Ass'n v. Bankers Life & Casualty Co.,* 514 F.2d 665, 670 (5th Cir.1975). Because a trademark registrant has the right to control the quality of the goods manufactured and sold under its trademark, courts have also held that confusion can arise as to responsibility for the quality of the goods if the unauthorized sale threatens the quality assurance function of the trademark. *Adolph Coors Co. v. A. Genderson & Sons, Inc.,* 486 F.Supp. 131, 135 (D.Colo.1980). *See also El Greco Leather Products Inc. v. Shoe World,* 806 F.2d 392, 395 (2d Cir.1986). Thus, genuine goods may be involved in trademark infringement and unfair competition claims if there is a likelihood of confusing the public either as to sponsorship and affiliation or as respects responsibility for quality. In the Fifth Circuit, the likelihood of confusion is a question of fact. *Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d 252, 257–58 (5th Cir.), *cert. denied,* 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980).

Matrix argues that Drug Emporium's unauthorized sale of genuine Matrix products falsely suggests affiliation with Matrix and also threatens the quality assurance function of the Matrix trademark. As to the false suggestion of affiliation, Matrix contends that Drug Emporium's disclaimer is ineffective and that, in any event, the effec-

tiveness of a disclaimer is an additional question of fact.

While the effectiveness of a disclaimer may be a question of fact, *see, e.g., Home Box Office, Inc. v. Showtime/Movie Channel, Inc.,* 832 F.2d 1311, 1315 (2d Cir.1987), a disclaimer expressly declaring that the seller is "not affiliated" with the owner of the trademark has been held to be an effective means of preventing confusion in the minds of consumers as to affiliation with the owner of the trademark in question. *Stormor, A Division of Fuqua Indus. Inc. v. Johnson,* 587 F.Supp. 275, 280 (W.D. Mich.1984).[4] Based on *Stormor,* the only reasonable conclusion is that Drug Emporium's disclaimer effectively prevents confusion in the minds of consumers as to affiliation with Matrix by expressly declaring that Drug Emporium is "not an authorized distributor of Matrix Essential Products."

As to threatening the quality assurance function of the trademark, Matrix asserts that the lack of professional advice regarding proper selection and application poses such a threat. However, there is no competent evidence to support the contention that professional consultation occurs when Matrix products are sold by authorized salons.[5] In fact, the only competent evidence submitted on this question demonstrates that no such consultations occur.[6] We hold, therefore, that Matrix has failed to produce evidence on an essential element of its claim.

In sum, we hold that Matrix cannot establish the confusion element essential to its claims under Counts I, II, and VI. Accordingly, we grant summary judgment and dismiss Counts I, II, and VI.

---

**4.** In *Stormor* the court declared such a disclaimer to be an effective means of preventing confusion even when the unauthorized seller advertises the trademarked product, a fact not present in this case as Drug Emporium did not advertise that it was selling Matrix products. Rather, Drug Emporium merely carried Matrix products on its shelves along with other trademarked goods.

**5.** Arnold Miller, President and CEO of Matrix, in a vague and evasive manner, seemed to testify that such consultations were routinely made and therefore formed an integral part of the

Matrix product experience. However, he admitted that he had no personal knowledge that such consultations were actually being made by the salons. *See* Deposition of Arnold Miller at pp. 71–75.

**6.** Two Drug Emporium employees submitted affidavits stating that they purchased a variety of Matrix products from several different salons in the Shreveport and Lafayette areas without receiving any sort of consultation or advice from salon employees.

## II. *Count III:*

■ There is no "common law" cause of action for trademark infringement or unfair competition under Louisiana law. Although there is a statutory cause of action for trademark infringement under Louisiana law which is identical to section 32(1) of the Lanham Act, *see* La.Rev.Stat.Ann. § 51:222, Matrix did not plead that statute.[7] Accordingly, we dismiss under Rule 12(b)(6) Matrix's claim for "common law" trademark infringement.

## III. *Count IV:*

■ Matrix alleges that it has "a specific right, in the nature of an equitable servitude, over the goods in question" because Matrix "has expressly provided in its contractual agreements with its distributors that its products are to be sold only to professional salons, and moreover, that the products are not designed for resale in general retail outlets...." Although Matrix never bothers to define the exact nature of this "equitable servitude," Matrix seems to suggest that the "contractual agreements with its distributors" create a sales restriction servitude that is enforceable against any person acquiring the goods for resale even though there is no privity of contract between such person and Matrix.

The notion of an "equitable servitude" running with a movable was expressly rejected by the Louisiana Supreme Court in *Dr. G.H. Tichenor Antiseptic Co. v. Schwegmann Bros. Giant Super Markets,* 90 So.2d 343 (La.1956). The *Dr. Tichenor* court declared that in the absence of privity of contract

[s]uch an argument simply ignores the basic principles of civil law relative to the ownership of property, particularly movable property. Article 490 of the Civil Code, defining perfect and imperfect ownership, clearly indicates that ownership of movables is always perfect unless it is to terminate at a certain time or on a

condition. Article 491 then declares that perfect ownership gives the owner the right to use, enjoy and dispose of his property in the most unlimited manner....

\* \* \* \* \* \*

[S]uch a lien or servitude or covenant running-with-the-article is not known to our law.

*Id.* at 350–51. In a footnote, the court further declared

Equitable servitudes running with a movable and restraints on the alienation of movable property are disfavored under the public policy of this State. Once a movable is sold, the seller relinquishes all interest therein and conditional sales, whereby the vendor retains title to the property, are not recognized in Louisiana.

*Id.* at 350 (citations omitted).

Matrix declares, however, that the *Dr. Tichenor* holding is no longer valid. As support for this contention, Matrix first points to the fact that the distinction between perfect and imperfect ownership was repealed in 1979, and the fact that current Article 478[8] provides in relevant part that "[t]he right of ownership may be ... burdened with a real right in favor of another person as allowed by law." Matrix then notes that real rights, which confer direct and immediate authority over a thing, may exist in both movables and immovables[9], and that, in principle, parties to a contract may create real rights "apart and beyond" those recognized in the Civil Code, provided such rights are not against public policy or law. La.Civ.Code Arts. 476, 478; *Queensborough Land Co. v. Cazeaux,* 136 La. 724, 67 So. 641 (1915). Based on these facts, Matrix concludes that there is nothing in the current Civil Code which bars the creation of a sales-restriction servitude that runs with a movable even though such a servitude is not expressly recognized by the modern Civil Code.

While parties to a contract may create between themselves real rights in movables

---

7. Even if Matrix had pleaded the Louisiana statute, our holding in Part I of this Ruling would require its dismissal.

8. Current Article 478 is based in part on former Article 490. La.Civ.Code Art. 478, comment (a).

9. La.Civ.Code Art. 476, comment (a).

above and beyond those expressly recognized by the Civil Code, no Louisiana or federal court has recognized the existence of a covenant or servitude that runs with a movable such that it is enforceable against subsequent purchasers who lack privity with the parties creating the covenant. Additionally, we find no indication that the current Civil Code intended to overrule the *Dr. Tichenor* holding. Indeed, comment (a) to current Article 478 states that although the article is new, "it does not change the law." Moreover, even if such a covenant or servitude could exist, it was not Drug Emporium who violated it. Rather, it was violated by the wholesale distributor from which Drug Emporium obtained Matrix products.[10] Accordingly, we hold that no relief can be granted on this claim and we dismiss it under Rule 12(b)(6).

## IV. *Count V:*

■ Based on the holding of *9 to 5 Fashions, Inc. v. Spurney*, 538 So.2d 228 (La. 1989), Matrix declares that Louisiana now recognizes an action for tortious interference with contractual and business relationships. We disagree. If anything, the *9 to 5* opinion recognized only an action wherein a corporate officer causes *his own corporation* to breach a contract between *his own corporation* and the plaintiff. *Id.* at 234. Clearly, there was never any contract between plaintiff and defendant in this case. Accordingly, we dismiss this claim under Rule 12(b)(6).

## V. *Conclusion:*

Consistent with the matters addressed in this Ruling, we GRANT defendant Drug Emporium's Motion to Dismiss and/or Motion for Summary Judgment. Further, it is hereby ordered that plaintiff's claims be DISMISSED with prejudice.

DONE AND SIGNED.

---

**10.** As we indicated in footnote 2, *supra,* there is dispute over the source of the Matrix products obtained by Drug Emporium.